STATE OF WEST VIRGINIA

*v.*

NORMAN KILPATRICK

(No. 13281)

Decided December 20, 1974.

*Timothy N. Barber* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Richard E. Hardison,* Deputy Attorney General, for defendant in error.

SPROUSE, JUSTICE:

In this proceeding upon a writ of error and supersedeas, the defendant, Norman Kilpatrick, seeks reversal of the judgment of the Circuit Court of Kanawha County, which upheld an order of the Intermediate Court of Kanawha County entered upon a jury verdict finding the defendant guilty of a misdemeanor.

The defendant was arrested and subsequently indicted for a violation of Code, 1931, 61-8-16, as amended, which prohibits the abusive use of a telephone. He was alleged to have made certain telephone calls to Robert Haynes in a manner which could "reasonably be expected to annoy, abuse, torment, harass, embarrass a person, to-wit: Robert Haynes." At the conclusion of a lengthy trial, the defendant was found guilty of the charges in the indictment and was assessed a fine of $250 plus costs.

The appellant assigns three errors: (1) That the trial court erred in denying the defendant's motion for a continuance of the trial; (2) that the trial court erred in denying defendant's motion to suppress evidence of telephone calls to the prosecuting witness which were not traceable to the defendant by either mechanical means or voice identification; and (3) that the trial court erred in refusing to exclude a juror for cause after the jury had been sworn but prior to the taking of the testimony.

We have reviewed the record concerning the first two assignments of error and find that the trial court ruled correctly in those instances. Those assignments of error, therefore, are without merit. The trial court erred, however, in refusing to exclude a juror who was the father of a key prosecution witness.

David Ellis, a security representative for the Chesapeake & Potomac Telephone Company, testified concern-

ing the company's tracing system and security measures. His father, also named David Ellis, was a member of the jury. Ellis' testimony was based upon company records concerning the telephone calls made from the defendant's residence to Haynes' residence and concerning certain other telephone calls. He was a key witness for the prosecution. The basis of the defendant's principal assignment of error is that the father was disqualified due to his blood relationship to this key prosecution witness.

Upon voir dire, the panel was asked: "* * * if any members of the panel are officers, stockholders or employees of the Chesapeake and Potomac Telephone Company? Or any immediate members of your family, are they officers, employees, or stockholders of the C & P Telephone Company?" The juror, Ellis, replied that his son worked for the telephone company, but he did not indicate that he would be a witness. He was questioned individually as follows by the court: "Would that (employment) influence your thinking on this verdict, should any evidence be presented by the Telephone Company?" Juror Ellis replied: "No."

Certain of the jury panel was struck for cause and peremptory challenges were exercised. Juror Ellis was not challenged, and the jury was subsequently sworn.

During a ten-minute recess prior to the opening statements, the juror, David Ellis, for the first time indicated that his son might be a witness in the case. The following appears from the record:

> "MR. BARBER: Your Honor, Mr. Ellis stated his son might be a witness in this case, and his son has already testified in this case at the preliminary hearing. I would ask Mr. Ellis to come to the bench.

> "Thereupon, juror Mr. David Leon Ellis came to the bench, out of the hearing of the other jurors, where the following transpired:

> "MR. ELLIS: I do not know a thing about this, your Honor.

"MR. BARBER: You have never discussed this in any fashion whatsoever?

"MR. ELLIS: No, sir.

"MR. BARBER: You are confident you can stand absolutely impartial?

"MR. ELLIS: Yes, sir, I don't know a thing about it, it has not been discussed at all.

"MR. BARBER: All right, Mr. Ellis.

"(Mr. Ellis then returned to the jury box, after which, still out of the hearing of the jury, the following transpired:)

"MR. BARBER: We move that the juror be disqualified, * * * and although he states he can be fair and impartial, I believe the blood relationship of a crucial witness in this case would disqualify this juror, and we challenge for cause that has just been revealed to this Court, by the juror.

"MR. CASEY: The trouble is, we have already taken four strikes apiece.

"THE COURT: Mr. Prosecutor, on voir dire the juror stated he had a son that worked for the telephone company, he has been out here with the rest of the jury, his son's testimony would be taken impartially, he states, and he could adjudicate the matter without any partiality one way or the other.

"I will overrule that.

"(Exception)."

Following the direct examination of the witness, Ellis, counsel for the defendant moved for a mistrial due to the fact that the witness' father was on the jury.

There can be no doubt that the telephone company in the prosecution under review had more than the interest of an impartial bystander. By stipulation of counsel, quoted remarks of a telephone company spokesman were admitted into the record. In referring to prosecution for

harrassing or abusive telephone calls, the company spokesman said:

> "A special office has been set up * * * to deal with the problem. Personnel has been trained in the area of tracing and working to gather evidence.

> "We are looking for convictions * * * and we are recruiting the cooperation of victims. The culprit, in many cases, can be found.

> "Complaints should be reported to the business office of the telephone company."

In deciding whether the court erred in not excluding the juror, two factors must be resolved: First, was the witness, David Ellis, in such essential position in relation to the prosecution that his juror-father should have been excluded? Secondly, since objection to the juror, Ellis, was not made until after the jury was sworn—was such objection too late under the rule that a late objection to a juror will not be considered unless the defendant is shown to have suffered injustice by his presence on the jury?

The law is settled that, if a juror is within a prohibited degree of relationship to a prosecuting witness, he should be excluded on motion of the adverse party. *See,* 50 C.J.S. *Juries,* Section 218, pages 956-57, which states:

> "* * * A juror is generally held to be incompetent in criminal cases if he is related to a prosecuting witness within the prohibited degree, although it has also been held that the relationship between the juror and the prosecuting witness must be such that it must be reasonably believed that it would influence the juror in reaching a verdict. It has been held that a juror is incompetent if he is related to a person who has voluntarily taken an active part in the prosecution or is particularly interested in the result, * * *."

See also 47 Am. Jur. 2d *Jury,* Section 315, pages 889-90; Annot., 18 A.L.R. 375; *Crawley v. State,* 151 Ga. 818, 108

S.E. 238; *State v. Tart,* 199 N.C. 699, 155 S.E. 609; *State v. Robinson,* 111 S.C. 467, 98 S.E. 329.

While it is true that witness Ellis was not technically the prosecuting witness, he was, in another sense even more than a prosecuting witness. His employer was vitally interested in obtaining convictions, and he was the agent of the company specifically employed to assist in that function. At the least, he was obviously "a person who has voluntarily taken an active part in the prosecuting, or is particularly interested in the result." 50 C.J.S. *Juries,* Section 218, pages 956-57. As socially desirable as such activities on the part of the telephone company may be, the company's attitude reflects its position as being in the nature of a private prosecutor.

In deciding the issue in this case, we must examine the rationale underlying disqualification of jurors who are related to parties or witnesses. Although the Court in *State v. Harris,* 69 W. Va. 244, 71 S.E. 609, for other reasons upheld the trial court's action in not excusing from the jury a relative of a prosecuting witness, the Court discussed in detail the reasons for such disqualification.

> "Relationship is a common law disqualification and the principle upon which it stands is very similar to that under which persons interested in one side or the other of a controversy are excluded. Its natural tendency and effect is to create bias and partiality in favor of the related party, and it is a maxim of the law that triers of questions of fact must be impartial and unbiased. For this reason relatives to parties to trials are not permitted to act as jurors. On the same principle, the constitutions and statutes of some states prohibit them from sitting as judges, to ascertain and apply the law to the facts, a matter as to which errors are correctable by appeal. It is a personal disqualification, based upon the most harmful and insidious element conceivable. 'Blood is thicker than water,' and it is utterly impossible for any person to determine how far the judgment or action of a person affected by it

may be swayed or controlled. It operates upon the mind and heart of the individual secretly and silently. Its operation is not disclosed by any outward manifestation other than the result. It is utterly impossible to look into a man's mind and see its operation. Its effect is not general, like many other disqualifications. It is purely personal, operating between the related parties and to the prejudice of all others. In this respect, it is wholly unlike many other disqualifications, relating to the character and standing of the juror, such as age, lack of citizenship, residence or property qualifications. A man disqualified in any of these particulars, may nevertheless be intellectually and morally as suitable and desirable as any other man not so affected. But one who has an interest in the subject matter of the litigation or is related to one of the parties, is palpably and wholly unfit for service as a juror. His disqualification is particular, not general, and extends into a litigation itself. * * *" *State v. Harris, supra* at 245-46, 71 S.E. at 609.

In *State v. Wilson,* W. Va., 207 S.E.2d 174, 180, this Court stated: "The true test as to whether a juror is qualified to serve on the panel is whether without bias or prejudice he can render a verdict solely on the evidence under the instructions of the Court."

In *State v. West,* ___ W. Va. ___, 200 S.E.2d 859, 865-66, we said:

> "Common law has generally been circumspect in permitting any juror to sit who is related to either party through kinship or interest. * * * Furthermore, as far as practicable the process of selecting jurors should endeavor to secure jurors who are not only free from prejudice, *but who are also free from the suspicion of prejudice.*" (Emphasis supplied.)

In judging possible prejudice on the part of a juror related to the witness other than the prosecuting witness, each case must be decided on its own facts. *State v. West, supra.* Weighing the facts in this case, if objection

to the juror, Ellis, was timely presented, it should have been sustained. We have alluded to the interest of the telephone company in the prosecution and to the son's special role. Juror Ellis heard the trial court describe the case as being one about the reception of annoying telephone calls and the use of telephone facilities and equipment in an unlawful manner. He knew of his son's employment with the telephone company, and stated it on voir dire. After being sworn, he indicated that his son might be a witness in the case. Under the circumstances, he obviously could not have been free from suspicion of prejudice towards his son's presentation of the case for the telephone company and for the State.

There are, however, a number of West Virginia cases which hold that, although a juror may have been disqualified, a new trial will not be granted if objection was first raised after the verdict. In those cases the disqualification was unknown to the defendant until after the verdict and could not have been discovered by the exercise of ordinary diligence. It was held that a new trial would be awarded only if it appeared that the defendant suffered injustice from the fact that the juror served upon the jury. *State v. Harris, supra; State v. Hobbs,* 37 W. Va. 812, 17 S.E. 380; *State v. Harrison,* 36 W. Va. 729, 15 S.E. 982; *State v. Greer,* 22 W. Va. 800; *State v. Strauder,* 11 W. Va. 745. It is not necessary to comment on the present validity of those holdings inasmuch as this case presents a substantially different question. Here a motion for disqualification for cause was made prior to the presentation of any evidence, but after the jury was sworn.

There is, of course, good reason not to permit as a matter of course challenges after the swearing of a jury. The New Jersey Supreme Court in *State v. Rios,* 17 N.J. 572, 112 A.2d 247, in referring to peremptory challenges, succinctly stated reasoning which could be applied to all challenges.

"Were we to sanction peremptory challenges after the swearing of the jurors, it would soon be-

come standard practice for counsel to withhold their peremptory challenges until a full panel had been sworn, doubtlessly hoping thereby to gain the advantage of an observation made after the entire panel had been selected. Such a procedure would lead to but further and needless delay in the selection of a jury and would not serve to advance the ends of justice." *State v. Rios*, 112 A.2d 258.

The New Jersey court held, however, in *State v. Jackson*, 43 N.J. 148, 203 A.2d, after quoting *Rios:* "* * * Although the applicable court rule provides that a challenge to a juror must be made before he is sworn, it also provides that 'the court for good cause shown may permit it to be made after he is sworn but before any evidence is presented.' " It also stated that: "The reasons stated by Justice Wachenfeld [in *Rios*] can have no application to the case at hand for here there was no deliberate withholding by defense counsel who sought to exercise peremptory challenge just as soon as the true facts were disclosed." *State v. Jackson, supra* at 161-62, 203 A.2d at 8.

The same rationale is contained in Chapter 56, Article 6, Section 15 of the Code of West Virginia, which provides: "No exception shall be allowed against a juror after he is sworn upon the jury on account of his age *or other legal disability unless by leave of court.*" (Emphasis supplied.) The question of whether the juror, Ellis, should have been removed then was within the discretion of the trial judge. The resolution of this entire issue, consequently, resolves into whether the trial court abused its discretion in leaving Ellis on the jury. We think that it did.

The facts of this case reveal that the involved juror not only knew of his son's employment, but knew that he might testify. They also indicate a strong possibility that he knew the probable nature of his testimony. Defense counsel had no way of knowing this, but the information was at least ascertainable by the prosecution. At the least, this creates the "suspicion of prejudice" inter-

dicted by *State v. West, supra,* and was a substantial reason for removing the juror. The refusal to do so constituted an abuse of discretion by the trial court. "Impartiality * * * is not a technical conception. * * * Whether * * * one of the parties is denied a fair and impartial trial, is not a procedural matter * * *. It is * * * to be resolved according to the highest standards of human conduct." *United States v. Chapman,* 158 F.2d 417, 419, (10th Cir.).

For reasons stated in this opinion, the judgments of the circuit court and the intermediate court are reversed and the case is remanded to the Circuit Court of Kanawha County for a new trial.

*Reversed and remanded;*
*new trial awarded.*