310 S.E.2d 883

**STATE of West Virginia**

v.

**Donald Wayne BECKETT.**

**No. 15887.**

Supreme Court of Appeals of West Virginia.

Dec. 16, 1983.

Harry A. Smith, III, Elkins, for appellant.

Chauncey H. Browning, Atty. Gen. and Michael E. Froble, Asst. Atty. Gen., Charleston, for appellee.

MILLER, Justice:

The defendant, Donald Wayne Beckett, appeals his aggravated robbery conviction, for which he was sentenced to serve ten years in the penitentiary. He assigns a number of errors: (1) the trial court's refusal to dismiss for cause two potential jurors; (2) the prosecutor's improper statements in closing argument and his improper impeachment of a defense witness; (3) the sufficiency of the indictment; (4) the trial court's refusal to grant a new trial based upon newly discovered evidence; (5) the sufficiency of the evidence; and (6) the giving of an instruction defining reasonable doubt. We conclude that the trial court committed no error and affirm the conviction.

The incident in question occurred on August 4, 1981. The victim, Thurman Channell, who knew the defendant and was formerly married to the defendant's half-sister, testified that on that evening, the defendant came into his house and struck him in the face with his fist. After the first blow, Mr. Channell was knocked out and could not remember how many other times he was struck by the defendant. When Mr. Channell recovered, he discovered that the money (approximately $144) he had placed in his shirt pocket was missing along with his gun. The telephone had been disconnected, so Mr. Channell had to go to a neighbor's house to call the police.

Another State's witness, Billy Ray Lloyd, testified that he accompanied the defendant to Mr. Channell's home and remained outside. He stated that while standing outside the house he saw the defendant strike Mr. Channell two or three times with his fists. Mr. Lloyd did not see the defendant take either the money or the gun. According to Mr. Lloyd's testimony, there had been no discussion of the proposed robbery prior to its occurrence.

The defendant testified that he went to Mr. Channell's house to question him about some accusations Mr. Channell had made to the police concerning the defendant. After knocking on the door and discussing the matter with Mr. Channell, the defendant claims that Mr. Channell swung at him for no apparent reason. In the ensuing scuffle, the defendant admitted striking Mr. Channell a couple of times, but denied taking either the money or the gun. The defendant testified that he left with Mr. Lloyd after observing that Mr. Channell was unconscious.

After the incident with Mr. Channell, the defendant and Mr. Lloyd returned to Mr. Lloyd's house. Some time thereafter, the defendant and two women left the house to purchase a case of beer, paid for by the defendant. Approximately two hours after the crime had occurred, the defendant was arrested, accompanied by these two women. In the search conducted incident to the arrest, neither the money nor the gun were recovered.

## I.

The defendant argues that two potential jurors—a sister of a Randolph County magistrate and a brother of a Randolph County jailer—should have been removed for cause based on their relationship with an employee in a law enforcement or prosecutorial agency. Because the issue is frequently before us, we take this opportunity to restate our standard.

Under our law, the eligibility and qualifications of jurors in both civil and criminal cases are controlled by several statutes [1] and by our adoption of the common law grounds for disqualification set out in *State v. Dushman*, 79 W.Va. 747, 749, 91 S.E. 809, 810 (1917):

"(1) Kinship to either party within the ninth degree; (2) was arbitrator on either side; (3) that he has an interest in the cause; (4) that there is an action pending between him and the party; (5) that he has taken money for his verdict; (6) that he was formerly a juror in the same case; (7) that he is the party's master, servant, counsellor, steward, or attorney, or of the same society or corporation with him; and causes of the same class or founded upon the same reason should be included." [2]

*See also State v. Riley*, 151 W.Va. 364, 383, 151 S.E.2d 308, 320 (1966).

We have traditionally held that once a party by a timely objection demonstrates that a juror has either a statutory or common law ground for disqualification, such juror should be removed for cause. We spoke to this point in Syllabus Point 2 of

1. As noted in *Watkins v. Baltimore and Ohio Railroad Co.*, 130 W.Va. 268, 43 S.E.2d 219 (1947), the following statutes pertain to eligibility and disqualification of petit jurors: W.Va. Code, 56–6–12 & 14; W.Va.Code, 61–5–3; W.Va. Code, 61–6–12. We also stated in *Watkins* that the statutory provisions relating to juror disqualification do not eliminate the common law grounds for juror disqualification.

2. This statement of the common law juror disqualifications for cause is substantially the same as found in 2 T. Cooley, Blackstone's Commentaries 362 (3d ed. 1884).

*Dushman:* "An employee of a railway company prima facie is disqualified to sit as a juror in the trial of one indicted for stealing or buying and receiving property of the railway company alleged to have been stolen." *See also State v. Kilpatrick,* 158 W.Va. 289, 210 S.E.2d 480 (1974); *State v. West,* 157 W.Va. 209, 200 S.E.2d 859 (1973); *State v. Davis,* 91 W.Va. 241, 112 S.E. 414 (1922).

■ It should be noted that while the common law disqualifications are in the main rather explicit, they are not without some ambiguity, particularly as to what is an "interest in the cause." Moreover, as illustrated in *State v. Kilpatrick,* 158 W.Va. 289, 210 S.E.2d 480 (1974), the disqualification because of kinship to a party is extended in criminal cases to a prosecution witness. In *Kilpatrick,* we concluded that a father whose son was a prosecution witness on a charge under W.Va.Code, 61–8–16, relating to the abusive use of a telephone, should have been removed for cause upon defense counsel's motion, and stated in Syllabus Point 2:

> "When a prospective juror is closely related by consanguinity to a prosecuting witness or to a witness for the prosecution, who has taken an active part in the prosecution or is particularly interested in the result, he should be excluded upon the motion of the adverse party."

■ *Kilpatrick* relied in part on this statement from *State v. West,* 157 W.Va. at 218–19, 200 S.E.2d at 865–66:

> "Common law has generally been circumspect in permitting any juror to sit who is related to either party through kinship or interest.... Furthermore, as far as practicable the process of selecting jurors should endeavor to secure jurors who are not only free from prejudice, but who are also free from the suspicion of prejudice."

In Syllabus Point 5 of *West,* we held that a challenge for cause should have been granted, disqualifying a juror who was an employee of the West Virginia Department of Public Safety:

> "In a criminal case it is reversible error for a trial court to overrule a challenge for cause of a juror who is an employee of a prosecutorial or enforcement agency of the State of West Virginia."

*Kilpatrick* indicated that a juror's disqualification for kinship extended to a prosecution witness who has taken an active part in the prosecution of the case. This is analogous to the common law disqualification by reason of kinship to parties since while the State is the formal party, the victim as the prosecuting witness, is a real party in interest. In *West,* the disqualification by reason of employment by a prosecutorial or enforcement agency of the State of West Virginia might be related to the master-servant common law disqualification, where the State is viewed as the master.

The narrow issue before us is whether a sister of a magistrate or a brother of a deputy sheriff who is a jailer at the county jail are per se disqualified from serving as jurors under *West* where neither the deputy sheriff nor the magistrate were shown to be actively involved in the prosecution of the case. We note that Syllabus Point 5 of *West* was limited to an "employee of a prosecutorial or enforcement agency." Thus, within the confines of the Syllabus Point neither of these jurors were disqualified as they were not employees.

However, defense counsel points to the language of *West:* "But when the defendant can demonstrate even a tenuous relationship between a prospective juror and any prosecutorial or enforcement arm of State government, defendant's challenge for cause should be sustained by the court." 157 W.Va. at 219, 200 S.E.2d at 866. He argues that such a tenuous relationship was shown in this case.

At the outset, we note that the linkage in *West* of law enforcement and prosecutorial employees embodies two different classes of persons, who under the general law are treated differently. Most jurisdictions allow law enforcement officers to serve as jurors in criminal trials, absent a showing of actual bias or prejudice. *See, e.g., United States v. Caldwell,* 543 F.2d 1333 (D.C.

Cir.1974), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976); *Jordan v. State*, 247 Ga. 328, 276 S.E.2d 224 (1981); *State v. Heald*, 443 A.2d 954 (Me.1982); *Commonwealth v. Wilborne*, 382 Mass. 241, 415 N.E.2d 192 (1981); *State v. Ternes*, 259 N.W.2d 296 (N.D.1977), *cert. denied*, 435 U.S. 944, 98 S.Ct. 1524, 55 L.Ed.2d 540 (1978); *State v. Van Dam*, 554 P.2d 1324 (Utah 1976); Annot., 72 A.L.R.3d 895 (1976).[3]

■ Generally speaking, a potential juror closely related by blood or marriage to either the prosecuting or defense attorneys involved in the case or to any member of their respective staffs or firms should automatically be disqualified. *Jackson v. State*, 374 A.2d 1 (Del.1977); *Haak v. State*, 417 N.E.2d 321 (Ind.1981); *Barnes v. State*, 263 Ind. 320, 330 N.E.2d 743 (1975); *Commonwealth v. Colon*, 223 Pa. Super. 202, 299 A.2d 326 (1972); Annot., 64 A.L.R.3d 126, 142 (1975).

■ We decline to retreat from Syllabus Point 5 of *West*.[4] However, we believe that the "tenuous relationship" language contained in the text of *West* cannot be taken to mean that any juror who is either related by kinship or marriage to or is acquainted socially with an employee of a law enforcement agency is automatically disqualified for cause. We believe that upon the disclosure of such a relationship the defendant must be permitted individual voir dire to determine whether the juror has any possible bias or prejudice arising out of such relationship. An automatic disqualification does arise, as noted in *Kilpatrick*, when the challenged juror has a close kinship with a law enforcement official who has taken an active part in the prosecution of the case being tried.

■ This was the procedure we set out in *State v. Pratt*, 161 W.Va. 530, 244 S.E.2d 227 (1978), where general voir dire questions disclosed that four jurors "were related by blood or marriage to, or a close friend of, a law enforcement officer." 161 W.Va. at 538, 244 S.E.2d at 232. Defense counsel requested additional individual voir dire of the four jurors to determine if their relationship created any bias or prejudice. The trial court refused this request. On appeal, in a unanimous opinion written by Justice Harshbarger, we did not hold that the jurors were per se disqualified for cause, but concluded in Syllabus Point 3:

> "Jurors who on *voir dire* of the panel indicate possible prejudice should be excused, or should be questioned individually either by the court or by counsel to precisely determine whether they entertain bias or prejudice for or against either party, requiring their excuse."

We have rather consistently applied the *Pratt* standard. Recently, in *State v. White*, 171 W.Va. 658, 301 S.E.2d 615 (1983), and *State v. Meadows*, 172 W.Va. 247, 304 S.E.2d 831 (1983), we held that a former deputy sheriff and a former prison guard were not per se disqualified as jurors and noted that on individual voir dire they expressed no bias or prejudice.

In *State v. Archer*, 169 W.Va. 564, 289 S.E.2d 178 (1982), we held that the court erred in failing to strike a juror for cause whose son was recently a deputy sheriff and was still involved in law enforcement activities. It is clear from *Archer* that the disqualification was not based upon any per se rule but on the fact that the juror indicated, in response to additional voir dire questions, that he would tend to favor the testimony of law enforcement officials.

In *State v. Maynard*, 170 W.Va. 40, 289 S.E.2d 714 (1982), we held that kinship to a magistrate did not automatically disqualify a prospective juror. Such a challenge could only be supported upon a showing of some bias or prejudice.

---

**3.** In *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), the Supreme Court concluded that a juror's submission of a job application to the prosecutor's office during the trial of the case, and the failure of the prosecution to disclose this fact during trial was not violative of due process where the defendant was permitted in a post-trial hearing to prove the juror's actual bias.

**4.** In *State v. Dye*, 167 W.Va. 652, 280 S.E.2d 323 (1981), we applied *West* to a juror who was a member of a city police force.

■ Thus, we believe that the correct rule, as stated in *West*, is that the employment of a prospective juror in a law enforcement or prosecutorial agency operates as a per se disqualification for cause if properly raised by counsel. However, as demonstrated in *Pratt*, a prospective juror's consanguineal, marital or social relationship with an employee of a law enforcement agency does not operate as a per se disqualification for cause in a criminal case unless the law enforcement official is actively involved in the prosecution of the case. After establishing that such a relationship exists, a party has a right to obtain individual voir dire of the challenged juror to determine possible prejudice or bias arising from the relationship.

■ Where, as in the present case, the party does not seek additional voir dire to demonstrate possible bias or prejudice, there is no error in the court's refusal to strike such prospective jurors for cause.

## II.

■ Three of the errors assigned by the defendant involve allegedly prejudicial and misleading statements made by the prosecuting attorney. During closing argument, the prosecuting attorney stated in effect that Mr. Channell would not lie. He also stated that Mr. Lloyd did not tell the jury everything that happened on the night of the robbery. The defendant contends that these comments unfairly influenced the jury. In Syllabus Point 5 of *State v. Ocheltree*, 170 W.Va. 68, 289 S.E.2d 742 (1982), we held:

"A judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice."

*See also* Syllabus Point 5, *State v. Sparks*, 171 W.Va. 320, 298 S.E.2d 857 (1982); Syllabus Point 7, *State v. Buck*, 170 W.Va. 428, 294 S.E.2d 281 (1982); Syllabus Point 2, *State v. Coulter*, 169 W.Va. 526, 288

S.E.2d 819 (1982). We do not believe these remarks were sufficiently prejudicial to constitute reversible error.

■ The defendant also alleges that the prosecuting attorney misstated the law during closing argument when he explained to the jury that male law enforcement officers were not permitted to search women. This issue arose at trial because the two women, who were with the defendant when he was arrested, claimed that they had been searched. The several law enforcement officers who testified denied that the women were searched, claiming that it was either against the law or department policy for a male law enforcement officer to perform a body search on a woman. In closing argument, the prosecuting attorney simply repeated the no-frisk policy that the officers alleged was in effect, which tended to support the officers' credibility.

■ The defendant further argues that the prosecuting attorney improperly impeached a defense witness on a past criminal conviction. In his motion for a new trial, the defendant, for the first time, contended that this was improper impeachment because the criminal charge against the witness was still pending in court. The failure of the defendant to make a timely objection forecloses consideration of this point on appeal, although we do note that the witness admitted in her testimony that she had in fact already been convicted of the crime referred to by the prosecuting attorney. *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129, 140 (1979); *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219, 227 (1978); Syllabus Point 4, *State v. Files*, 125 W.Va. 243, 24 S.E.2d 233 (1942).

## III.

■ The defendant alleges several other errors. He challenges the form of the indictment, contending that the indictment actually charges the defendant with only nonaggravated robbery.[5] A similar indictment form was analyzed by this Court and was upheld as properly charging aggrava-

---

5. In *State v. Harless*, 168 W.Va. 707, 285 S.E.2d 461 (1981), we discussed at some length the reasons why the terms "aggravated" and "nonag-

gravated" should be used in connection with our robbery statute, W.Va.Code, 61–2–12.

ted robbery in Syllabus Point 3 of *State v. Cunningham,* 160 W.Va. 582, 236 S.E.2d 459 (1977).

■■■ After the trial, the defendant presented evidence to show that Mr. Lloyd had refused to discuss the case with the defendant's attorney, which Mr. Lloyd denied at trial. The defendant argues that this newly discovered evidence should be the basis for a new trial, but we disagree. In the single Syllabus of *State v. Frazier,* 162 W.Va. 935, 253 S.E.2d 534 (1979), we reiterated Syllabus Point 1 of *Halstead v. Horton,* 38 W.Va. 727, 18 S.E. 953 (1894), which stated, in part:

> "[A motion for] 'new trial [based on after-discovered evidence] will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side.' " [6]

*See also State v. Smith,* 112 W.Va. 284, 164 S.E. 792 (1932). In *Frazier,* we recognized that in *State v. Stewart,* 161 W.Va. 127, 239 S.E.2d 777 (1977), we granted a new trial where the newly discovered evidence not only impeached the State's principal witness but also furnished support for the defendant's alibi defense. Here the fact that the State's witness Mr. Lloyd refused to talk to the defense attorney does not contradict any of his substantive trial testimony.

■■■ The defendant argues that the evidence was insufficient to justify the robbery conviction, but in reviewing the record, we find that the jury was presented with enough evidence on which to base its

decision. The victim identified the defendant, whom he had known before the attack, as the person who struck him. The victim also stated that after he regained consciousness, he realized that the money which had been in his shirt pocket was missing. The entry into the victim's house and the attack on the victim by the defendant was corroborated by Mr. Lloyd. We therefore reject this contention.

■■■ Finally, the defendant asserts that it was error for the trial court to give State's Instruction No. 4, which instructed that proof beyond a reasonable doubt means the jury "can say that they have an abiding conviction of the truth of the charge contained in the indictment." We concluded in *State v. Starr,* 158 W.Va. 905, 912, 216 S.E.2d 242, 247 (1975), that while such an instruction probably confuses rather than helps the jury, it was not reversible error. Since several other traditional reasonable doubt instructions were given on behalf of the defendant, we decline to find any error based upon this instruction. *See State v. Patton,* 171 W.Va. 419, 299 S.E.2d 31, 34 (1982).

For the foregoing reasons we affirm the judgment of the Circuit Court of Randolph County.

Affirmed.

---

6. The entire Syllabus Point of *Frazier* is:

> " 'A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side.' Syllabus Point 1, *Halstead v. Horton,* 38 W.Va. 727, 18 S.E. 953 (1894)."