372 S.E.2d 636

**STATE of West Virginia**

v.

**Arbie Lee PERDUE.**

**No. 18074.**

Supreme Court of Appeals of
West Virginia.

July 18, 1988.

Rehearing Denied Sept. 22, 1988.

McGinnis E. Hatfield, Jr., Princeton, for
Arbie Lee Perdue.

Charles G. Brown, Atty. Gen., Stephen Herndon, Asst. Atty. Gen., Charleston, for State.

PER CURIAM:

The defendant in this proceeding, Arbie Lee Perdue, was sentenced to life in the penitentiary for first-degree murder. On appeal he claims that the trial court erred in failing to exclude a prospective juror from the jury panel. He also claims that the State failed to introduce sufficient evidence of malice, premeditation, and deliberation to support a first-degree murder conviction. After reviewing the record this Court finds no reversible error. Accordingly, the judgment of the Circuit Court of McDowell County is affirmed.

The defendant was charged with the murder of Vonda Lee Rucker. On February 16, 1986, Ms. Rucker was shot in the head at a tavern or poolroom owned by the defendant in Northfork, West Virginia. At the time of the incident only the defendant and Ms. Rucker were present. During trial the defendant took the position that Ms. Rucker had accidentally shot herself in the course of a struggle. The State argued that the defendant had maliciously and premeditatedly shot her.

On appeal the defendant's first contention is that the trial court erred in failing to strike a prospective juror from the jury panel. The prospective juror, David K. Baker, indicated on voir dire that he was related to law enforcement officers. Specifically, his uncle and grandfather had been, but no longer were, policemen in the Town of Bradshaw, West Virginia. Mr. Baker was asked whether his having relatives involved in law enforcement would affect the believability of any law enforcement officers who might testify in the defendant's case. He responded that it would and that: "I tend to believe the policemen because of my grandfather and uncle."

After Mr. Baker had indicated that he would tend to believe police officers who testified as witnesses, an assistant prosecuting attorney asked him whether he would still be willing to sit as member of the jury and render a verdict based solely on the evidence and the court's instructions on the law. He replied that he would. Mr. Baker also indicated that because a policeman testified against the defendant would not automatically mean that he would find the defendant guilty. However, when later asked by defense counsel whether he would find the police officer more believable than a person who was not a police officer, Mr. Baker responded that he would.

To clarify the situation the court subsequently asked Mr. Baker:

I'd like for you to clear this up for me because your answer is conflicting to me. What I'm interested in in this case, if you were selected to be on this jury to hear this case, could you hear all of the evidence in the case and from all of the evidence, police officers and everybody else, could you render a verdict in this case for or against the State or the defendant?

Mr. Baker indicated that he could. The court then asked whether the decision would be from the evidence alone, and Mr. Baker answered "Yes."

After the examination of Mr. Baker, defense counsel moved that the court strike him from the venire for cause. The State resisted the motion, and the court denied the motion after making a finding that Mr. Baker would be an impartial juror. In making the ruling the court stated: "I believe he has indicated in the record that he has no prejudice for or against the defendant and he would listen to all of the evidence and from that evidence alone render a fair verdict." Subsequently, the defendant used a peremptory strike to strike Mr. Baker from the jury panel. During the defendant's actual trial the State called eight witnesses who were or who had been police officers.

In *State v. Beckett*, 172 W.Va. 817, 310 S.E.2d 883 (1983), this Court addressed the question of whether a prospective juror's relationship to a law enforcement officer disqualified him from participating in the trial of a criminal defendant. The Court concluded that relationship to an officer

who was not actively involved in the prosecution of the case did not *per se* result in disqualification of the prospective juror. The fact of the relationship did, however, require inquiry into whether the prospective juror was biased. The specific rule was stated in syllabus point 6 of *State v. Beckett, supra,* as follows:

A prospective juror's consanguineal, marital or social relationship with an employee of a law enforcement agency does not operate as a per se disqualification for cause in a criminal case unless the law enforcement official is actively involved in the prosecution of the case. After establishing that such a relationship exists, a party has a right to obtain individual voir dire of the challenged juror to determine possible prejudice or bias arising from the relationship.

Elsewhere this Court has indicated that the true test as to the qualification of a prospective juror is whether the juror can, without bias or prejudice, return a verdict on the evidence and the court's instructions and disregard any opinions he may have had prior to trial. *State v. Finley,* 177 W.Va. 554, 355 S.E.2d 47 (1987); *State v. Bennett,* 172 W.Va. 131, 304 S.E.2d 35 (1983); *State v. White,* 171 W.Va. 658, 301 S.E.2d 615 (1983); *State v. Neider,* 170 W.Va. 662, 295 S.E.2d 902 (1982).

In the case presently before the Court, Mr. Baker, the challenged venireman, indicated that he was related to policemen. However, there is nothing in the record to indicate that those policemen were in any way actively involved in the prosecution of the case against the defendant. When Mr. Baker's relationship to the police officers became known, the trial court subjected him to individual voir dire. During the voir dire, Mr. Baker rather clearly indicated that he could hear the evidence in the case and that he could render a verdict either for the State or for the defendant. He also indicated that he could render a verdict based solely upon the evidence and the court's instructions on the law.

After examining the record, this Court cannot conclude that Mr. Baker's relationship to law enforcement officers operated as a *per se* disqualification of him during the trial of this case. In accordance with the *Beckett* rule, the trial court did conduct required individual voir dire, and during that voir dire Mr. Baker indicated that he could render a verdict based solely upon the evidence and the court's instructions. Under the circumstances, this Court believes that the defendant has failed to show that the trial court committed reversible error by failing to exclude Mr. Baker from the jury panel.

The defendant's second assignment of error is that the State failed to introduce sufficient evidence to support a finding of malice or premeditation and that, therefore, there was insufficient evidence to support a first-degree murder conviction.

The evidence adduced during trial indicated that the defendant had had a stormy romantic relationship with the victim prior to her death. During the relationship there had been confrontations involving firearms. There had been physical struggles between the parties. Also, the victim had burned property which had belonged to the defendant and had stolen other property which had belonged to him.

At the time of the victim's death only the defendant and the victim were present in the defendant's tavern. According to the defendant the victim had been in a good mood just prior to the shooting. The defendant went into a kitchen. While in the kitchen he heard a noise and turned around. The victim walked in with a gun in one hand and said something that got his attention. Then, according to his testimony, he grabbed her hand in an effort to take the gun away. In so doing he lost his footing and fell back up against a bar. The gun went off and the victim fell to the floor.

After the shooting the defendant reported the incident to acquaintances who lived across the street.

According to V.V. Walker, Jr., a deputy who testified during trial, the defendant gave a number of conflicting statements at the time of their investigation. At one point the defendant told a police officer

that the gun was located beneath the victim's body when, in fact, the defendant had given it to one of the individuals who lived across the street. After his arrest the defendant indicated to Deputy Walker that the victim shot herself. Later he said that at the time of the incident he did not know the victim had a gun and that he dove on top of her and the gun discharged accidentally. At another point he said that he knew the victim had a gun and that it discharged during an argument. Still later the defendant told another police officer, Trooper Smoot, that the victim was playing with the pistol and dropped it accidentally to the floor, at which time it discharged and killed her.

The Chief Medical Examiner for the State of West Virginia, Dr. Irvin M. Sopher, testified that the victim had been killed by a single gunshot wound to the head, with the path of the bullet indicating that it had come from above and behind the left ear and passed downward and forward through the brain and into the right cheek bone above the right upper teeth. Dr. Sopher indicated that the muzzle of the gun had been pressed against the scalp of the victim and that the type of wound causing death was inconsistent with an accidental shooting. When asked if he felt that the shooting could have been consistent with the gun accidentally going off when the victim was wrestling with someone, he stated that if that had happened then the other person involved in the wrestling activity would have had to have been in control of the gun at the time it was fired. On cross-examination he indicated that he thought it was impossible for the victim's shooting death to have been accidental.

At the conclusion of the trial the jury found the defendant guilty of first degree murder, but recommended mercy. The defendant now claims that the evidence adduced was insufficient to show malice or premeditation and did not properly support either a first or second degree murder conviction.

In assessing the sufficiency of the evidence in a criminal case, this Court has repeatedly recognized that that evidence must be viewed in the light most favorable to the prosecution. *State v. Stiff*, 177 W.Va. 241, 351 S.E.2d 428 (1986); *State v. Riser*, 170 W.Va. 473, 294 S.E.2d 461 (1982); *State v. Ocheltree*, 170 W.Va. 68, 289 S.E.2d 742 (1982); *State v. Dobbs*, 169 W.Va. 284, 286 S.E.2d 918 (1982); *State v. Dye*, 167 W.Va. 652, 280 S.E.2d 323 (1981). In syllabus point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978), the Court amplified upon this:

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

The facts of the present case are similar to those presented in *State v. Ferguson*, 165 W.Va. 529, 270 S.E.2d 166 (1980). In *Ferguson*, as in the present case, only the victim and the defendant were present at the time the victim was shot and killed. The defendant testified that there was a physical struggle and that in the course of the struggle a pistol discharged. A forensic pathologist, after considering the path of the bullet and the evidence of powder residues, suggested that the victim could not have shot herself.

In *Ferguson*, as in the present case, there was a question as to whether there was sufficient evidence of malice and premeditation to support a first-degree murder verdict. The Court indicated that methods for proving malice could not be definitely delineated because malice is a subjective attitude. It further indicated that malice, as well as premeditation, could be inferred from the intentional use of a deadly weapon. *See State v. Ferguson*, 165 W.Va. at 534, 270 S.E.2d at 170.

■ There is an exception to the rule which provides that malice may be pre-

sumed from the use of a deadly weapon. That exception arises when the defendant is the victim of an unprovoked assault and in a sudden heat of passion uses a deadly weapon to kill the aggressor. Under such circumstances the defendant cannot be found guilty of murder unless there is proof of malice beyond the use of a deadly weapon. *State v. Kirtley*, 162 W.Va. 249, 252 S.E.2d 374 (1978). It is upon this exception that the defendant relies in the present case.

 After the shooting in the present case the defendant gave conflicting accounts of events surrounding the incident, accounts which were brought to the jury's attention. From the evidence, particularly from the testimony of the forensic experts, the jury could have concluded that the defendant shot the victim. Also, from the evidence, including the inconsistencies in the defendant's own statements, the jury reasonably could have concluded that the defendant was not the victim of an unprovoked assault and did not act in the heat of passion. If the jury so concluded, it properly could have inferred malice and premeditation from the use of a deadly weapon. In addition there was evidence that the defendant and the victim had been involved in a stormy relationship, a fact which might have led the jury to conclude, independent of the evidence relating to the use of a pistol, that the defendant acted in a malicious manner. *See State v. Ferguson, supra.*

The Court notes that the jury was plainly instructed that if the defendant was the victim of an unprovoked assault, and acted in self-defense or the heat of passion, malice could not be inferred from the use of a deadly weapon and the defendant could not be found guilty of murder.[1]

Overall, the Court believes that when the evidence in this case is viewed in the light most favorable to the prosecution, as is required by syllabus point 6 of *State v. Beckett, supra*, it supports the jury's verdict.

For the reasons stated, the judgement of the Circuit Court of McDowell County is affirmed.

AFFIRMED.

---

1. The court's actual instructions said:

   The Court further instructs the jury that if you believe from the evidence that a scuffle over the gun which ultimately resulted in the death of the deceased, Vonda Lee Rucker, was, without provocation, started by the deceased, and that Arbie Perdue, in fear for his safety endeavored to protect himself against the said Vonda Lee Rucker by attempting to take the gun from Vonda Lee Rucker, and in so doing the deceased was accidentally shot and killed, then you must find the accused not guilty.

   \* \* \* \* \* \*

   The Court instructs the jury that where a person is the victim of an unprovoked assault and in a sudden heat of passion uses a deadly weapon and kills the aggressor, he cannot be found guilty of murder where there is no proof of malice except the use of a deadly weapon. In order to find Arbie L. Perdue guilty of murder, the State must prove beyond a reasonable doubt that he killed Vonda Lee Rucker with malice.