# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 17-0962** (Marion County 15-F-21)

**Robert John Younkins II,**
**Defendant Below, Petitioner**

**FILED**

**October 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Robert John Younkins II, by counsel Scott A. Shough, appeals the Circuit Court of Marion County's October 6, 2017, order sentencing him to consecutive sentences of one to fifteen years of incarceration for each of his four burglary convictions and one to ten years of incarceration for each of his four grand larceny convictions. The State of West Virginia, by counsel Robert L. Hogan, filed a response in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in denying his motion to remove certain jurors for cause, denying his motion for a mistrial, and denying his motion for judgment of acquittal.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2015, petitioner was indicted on five counts of burglary and five counts of grand larceny. These charges stemmed from crimes committed at various residences in Marion County in March and October of 2014. Prior to trial, one count of burglary and one count of grand larceny were severed. As such, no ruling in regard to these two charges is at issue in this appeal.

In January of 2017, petitioner proceeded to a jury trial on the eight counts at issue. At trial, the State first established that petitioner possessed belongings taken from the victims' homes and sold them. Specifically, Sherzod Hayitov testified that he operates a business in Pittsburgh, Pennsylvania, that buys precious metals and other items from individuals. According to this witness, petitioner sold him goods over four transactions in 2014. The witness also testified that it is policy in his stores to take photographs of the driver's license of individuals selling goods and also take photographs of the goods sold. Mr. Hayitov further identified specific photographs of petitioner's identification and the items of jewelry he sold. The jury also heard testimony from the victims in the case, who all testified to the belongings taken from their

1

homes, the value of the items taken, and identified, from photographs, some of their belongings that were taken.

The State then introduced evidence connecting petitioner to the crimes at the victims' homes, including his admission to several of the crimes at issue. According to testimony from Detective Adrian Hayhurst of the Fairmont Police Department, he observed petitioner walking in an area where burglaries had been reported carrying two black cases, including a guitar case. Detective Hayhurst attempted to engage petitioner, but was unable to locate him after parking his vehicle. While he was investigating the burglaries a few days later, Detective Hayhurst located petitioner near a vehicle matching the description of a vehicle reported to be involved in the crimes. Detective Hayhurst asked petitioner to identify himself, but petitioner provided false identifying information and, as a result, was arrested for obstruction. Corporal Donald Ray Neal Jr. of the Fairmont Police Department also testified that he observed petitioner driving the vehicle matching the description of the vehicle used in the crimes.

The jury heard testimony from Lieutenant Douglas Yost of the Fairmont Police Department, who testified that he and Detective Samuel Murray of the Fairmont Police Department conducted two recorded interviews[1] with petitioner after also providing a *Miranda*[2] warning. During his recorded interviews, petitioner recalled taking trips to Pittsburgh to obtain cash for jewelry, including the amount of money he was paid, generally, for the items he sold. Petitioner also admitted that a stolen violin, among other stolen items, was in the attic of his house. After petitioner told the officers that "everything" was in the attic, Detective Murray asked petitioner if "it [was] the stuff [he] stole from the houses that [he] broke into[,]" which petitioner confirmed. Petitioner then wrote a letter apologizing to the victim from whom he had stolen the violin. This letter included the statement that petitioner was "sorry that [he] took [the victim's] stuff." Upon searching petitioner's attic, with his consent, the officers located the stolen guitar and violin, along with a trash bag containing jewelry. Moreover, it was established that petitioner was wearing a wristwatch stolen from one of the victims upon his arrest. Ultimately, he was found guilty on all counts.

In September of 2017, the circuit court sentenced petitioner to not less than one nor more than fifteen years of incarceration for each of his four burglary convictions and not less than one nor more than ten years of incarceration for each of his four grand larceny convictions. The circuit court ordered that these sentences be served consecutively. It is from the circuit court's sentencing order that petitioner appeals.

On appeal, petitioner first argues that the circuit court erred in denying his motion to strike, for cause, a potential juror that he alleges had a "close connection" to the Marra family,

---

[1]Petitioner's recorded interviews were introduced into evidence below.

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

one of the families that were victims in the matter.[3] According to petitioner, Juror Retton indicated that he had known the victims for approximately fifteen to twenty years and had coached youth sports with Mr. Marra for over ten years. Petitioner argues that the circuit court denied his motions in spite of these apparent connections, which resulted in prejudice because he was forced to "exercise strikes to the panel that would have otherwise been used differently. . . ."

This Court has held as follows:

> The challenging party bears the burden of persuading the trial court that the juror is partial and subject to being excused for cause[]. An appellate court only should interfere with a trial court's discretionary ruling on a juror's qualification to serve because of bias only when it is left with a clear and definite impression that a prospective juror would be unable faithfully and impartially to apply the law.

Syl. Pt. 6, *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996). Further

> [t]he relevant test for determining whether a juror is biased is whether the juror had such a fixed opinion that he or she could not judge impartially the guilt of the defendant. Even though a juror swears that he or she could set aside any opinion he or she might hold and decide the case on the evidence, a juror's protestation of impartiality should not be credited if the other facts in the record indicate to the contrary.

*Id.* at 593, 476 S.E.2d at 540, Syl. Pt. 4. Finally, "[a]ctual bias can be shown either by a juror's own admission of bias or by proof of specific facts which show the juror has such prejudice or connection with the parties at trial that bias is presumed." *Id.* at 593, 476 S.E.2d at 540, Syl. Pt. 5. With these standards in mind, we find no error in the circuit court's denial of petitioner's motion to strike Juror Retton for cause.

During voir dire, Mr. Retton indicated that he was "probably more acquaintances" with the Marra family, having been familiar with them approximately fifteen to twenty years "through athletics." While Mr. Retton did indicate that he coached with Mr. Marra for approximately ten years, he declined to describe their relationship as that of "pretty good friends" given that the two "didn't really hang out outside the field." Mr. Retton further indicated that he had heard about

---

[3]Petitioner also alleges error in the circuit court's refusal to strike another juror, Ms. Frame, for cause. However, it is important to note that Juror Frame was excused for an unrelated medical issue and did not require the use of any of petitioner's peremptory strikes. As such, it is clear that petitioner was not prejudiced by the circuit court's refusal to grant his motion to strike Juror Frame for cause. *See* Syl. Pt. 6, *State ex rel. Farmer v. McBride*, 224 W.Va. 469, 686 S.E.2d 609 (2009) ("In order to succeed in a claim that [a defendant's] constitutional right to an impartial jury was violated, a defendant must affirmatively show prejudice."). As such, we decline to address this issue on appeal.

the crime at the Marras's home, but that he had not talked to them about it and had no personal knowledge of the crime. Ultimately, Mr. Retton indicated that he could be fair and impartial hearing the evidence in the case and rendering a verdict.

In arguing that Mr. Retton should have been struck for cause, petitioner relies on syllabus point 6 of *State v. Beckett*, 172 W.Va. 817, 310 S.E.2d 883 (1983), wherein we held as follows:

A prospective juror's consanguineal, marital or social relationship with an employee of a law enforcement agency does not operate as a *per se* disqualification for cause in a criminal case unless the law enforcement official is actively involved in the prosecution of the case. After establishing that such a relationship exists, a party has a right to obtain individual voir dire of the challenged juror to determine possible prejudice or bias arising from the relationship.

In short, petitioner argues that Mr. Retton's "social relationship" with the Marra family "is analogous to that with a law enforcement officer who is investigating the case" as discussed in *Beckett*. We note, however, that the circuit court specifically found that the juror did not demonstrate prejudice or bias arising from the limited relationship. As such, petitioner is not entitled to relief.

We further note that, on appeal, petitioner fails to allege any prejudice to him in the circuit court's failure to strike Mr. Retton for cause, beyond his general assertion that he was prejudiced by having to use a peremptory strike to remove him. In making his argument, petitioner ignores our prior holdings, wherein we have directed as follows:

A trial court's failure to remove a biased juror from a jury panel, as required by W.Va. Code § 62-3-3 (1949) (Repl.Vol.2010), does not violate a criminal defendant's right to a trial by an impartial jury if the defendant removes the juror with a peremptory strike. In order to obtain a new trial for having used a peremptory strike to remove a biased juror from a jury panel, a criminal defendant must show prejudice. The holding in Syllabus point 8 of *State v. Phillips*, 194 W.Va. 569, 461 S.E.2d 75 (1995), is expressly overruled.

Syl. Pt. 3, *State v. Sutherland*, 231 W.Va. 410, 745 S.E.2d 448 (2013). Petitioner has failed to present evidence of bias or prejudice and, as such, we find no error.

Next, petitioner argues that the circuit court erred in failing to grant a mistrial after Lieutenant Yost, on cross-examination, testified that petitioner "broke into probably 40 or 50 houses." According to petitioner, because he was on trial for breaking into only four homes, this testimony constituted submission to the jury of improper evidence of a highly prejudicial nature. Petitioner further argues that, because the statement came from a law enforcement officer, the statement cannot be considered harmless error in that it "had the effect of negating to an unknown exten[t] petitioner's argument that the evidence was insufficient to warrant a conviction. . . ." As such, petitioner argues that a mistrial was necessary. We disagree.

4

"The decision to grant or deny a motion for mistrial is reviewed under an abuse of discretion standard." *State v. Lowery*, 222 W.Va. 284, 288, 664 S.E.2d 169, 173 (2008). Further,

> [t]he decision to declare a mistrial, discharge the jury and order a new trial in a criminal case is a matter within the sound discretion of the trial court. A trial court is empowered to exercise this discretion only when there is a "manifest necessity" for discharging the jury before it has rendered its verdict. This power of the trial court must be exercised wisely; absent the existence of manifest necessity, a trial court's discharge of the jury without rendering a verdict has the effect of an acquittal of the accused and gives rise to a plea of double jeopardy.

*Id*. (quoting *State v. Williams*, 172 W.Va. 295, 304, 305 S.E.2d 251, 260 (1983)). Upon our review, we find no abuse of discretion in the circuit court's denial of petitioner's request for a mistrial.

To begin, it is important to note that the testimony of which petitioner complains was elicited by his counsel upon a vigorous cross-examination of Lieutenant Yost that attacked his promise to advocate on petitioner's behalf during their interviews. Petitioner questioned the witness about possible inducement of his confession through various promises, including Lieutenant Yost's offer to secure Subutex for petitioner if he produced a valid prescription and Lieutenant Yost's indication that, if possible, he would "arrange for a visit" between petitioner and his daughter. In pursuing this line of questioning, the following exchange occurred:

> [Defense Counsel]: You and Detective Murray toward the end of [the interview] are talking about advocating for [petitioner] to the prosecutor. Do you remember that part of it?
>
> [Witness]: Yes.
>
> [Defense Counsel]: Do you believe today with the testimony against him that you're somehow attempting to advocate for him?
>
> [Prosecutor]: Objection, Your Honor. There's a lot more behind the scenes to that than what [defense counsel] is implying, and I think that mischaracterizes what happened.
>
> The Court: Well, the witness can answer and explain if he needs to.
>
> [Witness]: As I explained to him in the interview and as I explain to anyone in an interview, and I accept only one thing from the officers and myself, I'm here to tell the truth, the same thing I asked him in the interview. Behind the scenes I did advocate for him with the prosecutor's office with plea negotiations. I did offer – I'm not trying to step out of bounds, he broke into probably 40 or 50 houses. He's –

5

[Defense Counsel]:   Let me stop you, because he's not accused of breaking into 40 or 50 houses.

[Defense Counsel]:   Your Honor, I would move that the witness be directed as to what –

The Court:   You asked the question and he gets to answer it and explain.

At this point, the parties approached the bench to discuss the witness's comment. Petitioner moved for a mistrial, which the circuit court denied. Petitioner was permitted, however, to offer a limiting instruction concerning the statement. Ultimately, petitioner chose not to have the circuit court provide such a limiting instruction "in an effort to mitigate the damage that had been done by not drawing additional emphasis to the statement."

Importantly, the State attempted to limit this line of questioning at the outset by objecting to the question of whether Lieutenant Yost believed he advocated for petitioner. Despite this objection, the witness was permitted to answer petitioner's question and explain, if need be. As such, Lieutenant Yost sought to provide the full context of his advocacy on petitioner's behalf, which included the full scope of his investigation into petitioner's criminal conduct. It is also important to note that counsel was aware of the fact that petitioner was investigated for numerous crimes beyond those charged in the indictment. Indeed, during trial, petitioner's counsel questioned witnesses about the scope of the investigation and identified several other burglaries that were being investigated, but for which petitioner was never charged. As such, counsel should have been aware that his question concerning Lieutenant Yost's advocacy with the prosecution on petitioner's behalf could implicate the entirety of the witness's investigation, especially after the State made reference to the witness's actions "behind the scenes" in its objection. As such, any alleged error of which petitioner could complain in regard to Lieutenant Yost's statements being admitted into evidence was a direct result of his own invitation and he is entitled to no relief in this regard. *See State v. Crabtree*, 198 W.Va. 620, 627, 482 S.E.2d 605, 612 (1996) ("Where inadmissible evidence is introduced solely as a result of the rigorous examination of the complaining party, the error is deemed invited error."). Accordingly, we find no abuse of discretion in the circuit court denying petitioner's motion for a mistrial.

Finally, petitioner argues that the circuit court erred in denying his motion for judgment of acquittal. In short, he argues that "no physical evidence of any kind was found that would place [him] in the residences that were broken into and stolen from." While petitioner admits that he was in possession of stolen property, was observed in the general location of one burglary in possession of "a possibly stolen guitar[,]" and felt sympathetic toward the victims, he argues that he never admitted to any specific burglary.[4] As such, petitioner argues that it was error to deny his motion for judgment of acquittal. We do not agree.

---

[4]At no point in his argument in support of this assignment of error does petitioner allege that there was insufficient evidence to support any of his convictions for grand larceny.

"The Court applies a *de novo* standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Juntilla*, 227 W.Va. 492, 497, 711 S.E.2d 562, 567 (2011) (citing *State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996)). Moreover,

> "[t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

*Juntilla*, 227 W.Va. at 494, 711 S.E.2d at 564, Syl. Pt. 1. Finally,

> "[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." Syl. Pt. 3, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

*Juntilla*, 227 W.Va. at 494, 711 S.E.2d at 564, Syl. Pt. 2.

It is important to point out that, in his brief on appeal, petitioner does not provide any specific argument attacking the evidence the State introduced. While he argues there was a lack of physical evidence placing him in the home, he fails to cite to a single portion of the trial transcript to support his argument that the State's evidence was insufficient. Petitioner similarly fails to cite to the relevant statutes under which he was convicted to establish which elements he alleges were not satisfied. Instead, petitioner simply concludes that the evidence was insufficient without attempting to address any specific evidence that was admitted. This is in contradiction to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, which requires that the argument in appellate briefs "must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal." Even more important, however, is the

fact that petitioner wholly ignores his admission to the majority of the crimes at issue in his recorded interviews with law enforcement.[5]

Specifically, petitioner admitted that he committed crimes at three of the four homes at issue, and these recorded interviews were admitted into evidence below. In addition, the prosecution played portions of the recorded interviews during its closing argument in order to highlight petitioner's admission that he "did the ones [he] gave back the property" for, which constituted three of the four homes at issue. Petitioner also wrote an apology letter to one of these victims, which was also admitted into evidence below, wherein he specifically admitted as follows: "I'm sorry that I took your stuff." While petitioner argues on appeal that he simply received stolen property and "never clearly admitted to any specific burglary[,]" this is in direct contradiction to the evidence set forth above. Further, in relation to the fourth home at issue, the evidence indicated that petitioner sold at least twenty-four of the twenty-six items stolen from that home. Moreover, a law enforcement officer testified at trial that the crimes committed at the fourth home at issue "had the same modus operandi as all the other burglaries that [were] investigated, including the three to which [petitioner] admitted." In short, the evidence against petitioner was overwhelming, and we find no error in the circuit court denying petitioner's motion for judgment of acquittal.

For the foregoing reasons, we affirm.

Affirmed.


**ISSUED:** October 19, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II suspended and therefore not participating.

---

[5]Petitioner did not include these recorded interviews in his appendix record on appeal, although the State did later supplement the record with both recorded interviews.