566 S.E.2d 263

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Elizabeth SCHERMERHORN, Defendant Below, Appellant.**

**No. 30085.**

Supreme Court of Appeals of West Virginia.

Submitted March 12, 2002.

Decided June 13, 2002.

Darrell V. McGraw, Jr., Attorney General, Scott E. Johnson, Senior Assistant Attorney General, Charleston, for Appellee.

Bader C. Giggenbach, Esq., Brewer & Giggenbach, PLLC, Morgantown, for Appellant.

PER CURIAM.

On September 20, 2000, a Monongalia County jury found the appellant, Elizabeth Schermerhorn, guilty of driving under the influence of alcohol, third offense, in violation of *W.Va.Code*, 17C–5–2 [1996]. The trial judge sentenced the appellant to one to three years in the state penitentiary, but suspended execution of the appellant's sentence and granted the appellant's request to be released on a bond pending the outcome of this appeal.

In her brief, the appellant has asserted fourteen assignments of error. This Court reverses the appellant's conviction primarily on the ground of the trial court's failure to strike a juror for cause.

## I.

On the evening of January 13, 2000, Crystal Stevens and her sister-in-law, Rebecca Stevens, were working as servers in a restaurant in the Morgantown Ramada Inn. After finishing work around midnight, the two made their way to Fanny's Lounge, a bar also located in the Ramada Inn. In the bar, Crystal and Rebecca Stevens encountered the appellant, Elizabeth Schermerhorn. According to their testimony, the appellant was drinking and became verbally combative with Crystal and Rebecca. The appellant thereafter left the bar. Crystal and Rebecca Stevens left the bar shortly after the appellant and encountered her outside of the Ramada Inn. The appellant was seated in her car, revving the engine. According to the Stevens' testimony, the appellant pointed a gun at them. With her finger appearing to be on the trigger, the appellant allegedly said, "Here's my little friend, bitch, you want to come meet it[?]."

Crystal and Rebecca then ran back inside the Ramada Inn, where the front desk manager called the police. Several police officers from the Monongalia County Sheriff's Department arrived. While police officers searched the grounds for a gun, other officers apprehended the appellant, who had gone inside the building and was waiting at the front desk. The police searched the appellant to see if she was armed. No weapon was found on the appellant, but a small quantity of marijuana was found in her purse.[1] The police officers next took the appellant outside and proceeded to administer a field sobriety test to the appellant. Lieutenant Kisner positioned his police vehicle, which contained a videotaping system, at the front entrance of the hotel and taped the field sobriety tests. According to Lieutenant Kisner, no audio was included on the videotape because the system's microphone was with him inside the car. Deputy Jones, the investigating officer who was administering the test, had a small audio tape recorder with him that he operated as he administered the

test, but according to his testimony, he misplaced the audio tape and it was, therefore, unavailable at trial. Additionally, the videotape of the appellant was partially erased at some point.

After conducting the field sobriety test, a police officer handcuffed the appellant and escorted her back into the hotel. A police officer asked Crystal and Rebecca Stevens whether the appellant, who was handcuffed and standing next to Lieutenant Kisner, was the woman who had accosted them in the parking lot. Both agreed that it was the same woman.

The appellant was arrested and charged with the offenses of driving under the influence of alcohol and possession of marijuana. On May 5, 2000, a Monongalia grand jury indicted the appellant for third offense driving under the influence of alcohol in violation of *W.Va.Code*, 17C–5–2 [1996] and possession of a controlled substance in violation of *W.Va.Code*, 60A–4–401(c) [1983].[2]

After a two-day jury trial, the jury found the appellant guilty of third offense driving under the influence of alcohol.

Of the appellant's fourteen assignments of error, this Court will primarily address the trial court's failure to strike a juror for cause, the trial court's admission of evidence relating to the breathalyzer test, and appellant's allegation of cumulative error.

## II.

This Court applies a two-prong deferential standard when reviewing a trial court's findings and conclusions. *See Doe v. Wal–Mart Stores, Inc.*, 210 W.Va. 664, 558 S.E.2d 663 (2001). "We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syllabus Point 2, *Walker v. West Virginia Ethics Commission*, in part, 201 W.Va. 108, 492 S.E.2d 167 (1997).

---

1. The grounds of the Ramada Inn were searched, and the appellant's vehicle and purse were also searched with appellant's permission, but no firearm was found.

2. The State opted not to pursue the misdemeanor charge of possession of a controlled substance against the appellant.

■ The appellant alleges that the trial court erred in failing to strike a potentially biased prospective juror. The object of jury selection is to secure jurors who are not only free from improper prejudice and bias, but who are also free from the suspicion of improper prejudice or bias. As far as is practicable in the selection of jurors, trial courts should strive to secure jurors who are not only free from prejudice or bias, but also are not even subject to any well-grounded suspicion of any prejudice or bias. *State v. Dephenbaugh,* 106 W.Va. 289, 145 S.E. 634 (1928); *State v. Siers,* 103 W.Va. 30, 136 S.E. 503 (1927).

In the instant case, appellant challenged a prospective juror whose stepfather was a West Virginia University police officer who had previously worked for the Monongalia County Sheriff's Department. Initially, the challenged juror stated that she could impartially consider the evidence. After additional questioning by the court, however, she qualified her answer. The challenged juror also revealed that she "grew up" with the assistant prosecuting attorney assigned to the case, was related by marriage to another assistant prosecutor, and was socially acquainted with still another assistant prosecutor. In response to "rehabilitation-type" questions, the challenged juror stated that her relationships with attorneys working for the prosecuting attorney's office would not influence her ability to be impartial.

Additionally, the same challenged prospective juror also knew three potential trial witnesses: an investigating officer, a hotel clerk, and the tow truck operator. When asked whether she would be inclined to give their testimony more or less weight than other witnesses, she responded that "maybe one of them because I know him better than the others, so I would tend to think [he] wouldn't lie. You have to answer the question honestly, right?"

When appellant's counsel asked the prospective juror whether her knowledge of the witnesses and assistant prosecutors would make it difficult for her to serve, she responded, "There's a possibility. I would like to think that I'm not that kind of person, but I can't honestly say 'no.'"

■ Trial judges are often faced with the task of deciding whether to keep a prospective juror who may have disqualifying prejudices or biases. "When considering whether to excuse a prospective juror for cause, a trial court is required to consider the totality of the circumstances and grounds relating to a potential request to excuse a prospective juror, to make a full inquiry to examine those circumstances and to resolve any doubts in favor of excusing the juror." Syllabus Point 3, *O'Dell v. Miller, et al.,* 211 W.Va. 285, 565 S.E.2d 407 (2002). When there is doubt as to the prospective juror's suitability, a trial court should exclude the prospective juror. Trial courts may be tempted to seek to "rehabilitate" a juror who may be tainted with disqualifying prejudice or bias. We cautioned in *O'Dell* that trial courts are to resist the temptation to "rehabilitate" prospective jurors who have indicated a potential for prejudice or bias. "Once a prospective juror has made a clear statement during *voir dire* reflecting or indicating the presence of a disqualifying prejudice or bias, the prospective juror is disqualified as a matter of law and cannot be rehabilitated by subsequent questioning, later retractions, or promises to be fair." Syllabus Point 5, *O'Dell v. Miller, et al., supra.*

■ In the instant case, despite all of the substantial evidence showing likely disqualifying prejudice or bias, the trial court failed to strike the challenged juror for cause, and she remained on the jury panel. "Actual bias can be shown either by a juror's own admission of bias or by proof of specific facts which show the juror has such prejudice or connection with the parties at trial that bias is presumed." Syllabus Point 5, *State v. Miller,* 197 W.Va. 588, 476 S.E.2d 535 (1996). We conclude that the challenged juror was clearly not free from the suspicion of prejudice or bias and that the trial court erred by failing to strike the challenged juror for cause.

Additionally, on the morning of the first day of trial, the trial court granted the defendant's motion *in limine* to preclude the prosecution from introducing the "Accuracy Inspection Test" sheet for the "Intoxilyzer

5000," the breathalyzer machine used to test the appellant after her arrest. The trial court excluded the breathalyzer test sheet from being offered as evidence because the prosecution had failed to disclose it as a trial exhibit to the appellant as required. While the trial court refused to allow the State to introduce the Intoxilyzer test sheet, the trial court did not preclude the State from otherwise introducing evidence to support the breathalyzer results.

At trial, over appellant counsel's objection, Deputy Jones testified that the breathalyzer he used was approved by the Division of Health and that it was working properly. Over the appellant's counsel's hearsay objection, Deputy Jones testified that a West Virginia State Police sergeant had performed the last accuracy test on November 23, 1999, that the accuracy tests were performed quarterly, and that the machine at issue had been properly tested.

This Court has held that:

In the trial of a person charged with driving a motor vehicle on the public streets or highways of the state while under the influence of intoxicating liquor, a chemical analysis of the accused person's blood, breath or urine, in order to be admissible in evidence in compliance with provisions of W.Va.Code, 17C-5A-5, "must be performed in accordance with methods and standards approved by the state department of health." When the results of a breathalyzer test, not shown by the record to have been so performed or administered, are received in the trial evidence on which the accused is convicted, the admission of such evidence is prejudicial error and the conviction will be reversed."

Syllabus Point 4, State v. Dyer, 160 W.Va. 166, 233 S.E.2d 309 (1977). And, we have further held that "[b]efore the result of a Breathalyzer test for blood alcohol administered pursuant to Code, 17C-5A-1, et seq., as amended, is admissible into evidence in a trial for the offense of operating a motor vehicle while under the influence of intoxicating liquor, a proper foundation must be laid for the admission of such evidence." Syllabus, State v. Hood, 155 W.Va. 337, 184 S.E.2d 334 (1971).

The trial court, in essence, permitted the State to do indirectly that which it prohibited it from doing directly—establishing a foundation for the admissibility of and getting into evidence, the Intoxilyzer results. The trial court, in permitting this evidence to be admitted in the trial, committed error.

The appellant raises twelve additional assignments of error, some of which are not without merit. These assignments of error include allegations of improper jury instructions, identification procedure defects, mishandling of audio and video tape evidence by the State's witnesses, permitting introduction of evidence in relation to appellant's possession of drugs despite a ruling in limine that prohibited the evidence, indictment irregularities, the State's failure to provide the appellant with required information on the State's witnesses, and cumulative error. The Court finds that the issues raised by the appellant are supported by credible argument and suggest that cumulative error deprived the appellant of a fair trial.

Cumulative error occurs "[w]here the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error." Syllabus Point 5, State v. Smith, 156 W.Va. 385, 193 S.E.2d 550 (1972). Taken in combination with the trial court's erroneous failure to strike a prospective juror for prejudice or bias, and the admission of evidence of the breathalyzer results, we also reverse the instant case on cumulative error grounds.

III.

For the foregoing reasons, the appellant's conviction is reversed and this matter is remanded to the trial court for further proceedings.

Reversed and Remanded.