640 S.E.2d 560

Mike MIKESINOVICH, Executor of the Estate of Mary E. Mikesinovich, Plaintiff Below, Appellant,

v.

REYNOLDS MEMORIAL HOSPITAL, INC., Defendant Below, Appellee.

No. 32968.

Supreme Court of Appeals of West Virginia.

Submitted: Sept. 19, 2006.

Decided: Nov. 16, 2006.

James G. Bordas, Jr., Esq., James G. Bordas, III, Esq., Geoffrey C. Brown, Esq., Bordas & Bordas, Wheeling, for Appellant.

Ancil G. Ramey, Esq., James C. Wright, Esq., Hannah B. Curry, Esq., Steptoe & Johnson, Charleston, for Appellee.

PER CURIAM.

In this case we remand a case for a new trial because the spouse of one of the jurors was a long-time employee of one of the parties to the case.

I.

*Facts & Background*

This appeal arises from a jury trial in the Circuit Court of Marshall County, West Virginia. The appellant and plaintiff below, Mark Mikesinovich, is the executor of the estate of his mother, the late Mary Mikesinovich.

In January of 2001, Mary Mikesinovich was an inpatient at Reynolds Memorial Hospital, the appellee and defendant below; she

was hospitalized in connection with surgery for the excision of a lump in her breast. Mrs. Mikesinovich fell to the floor and broke her hip while she was being assisted by a hospital employee (a nurse) in moving from a hospital bed to a wheelchair. Mrs. Mikesinovich and her son Mark thereafter brought a lawsuit against the hospital, seeking compensation for the injuries that Mrs. Mikesinovich suffered when she fell.[1]

At a jury trial of the case in 2004, witnesses presented sharply differing views on the issue of whether the hospital was negligent. A jury of six persons returned a verdict in favor of the appellee hospital. The appellant appeals that verdict and the judgment thereon, principally arguing that the circuit court erred by not striking five of the members of the panel from which the jury was selected, all of whom were challenged by the appellant's counsel for cause.[2]

The spouse of one of the challenged prospective jurors, whom we shall refer to as Juror W, had worked for the appellee hospital as a nurse for twenty-three years.[3] In light of our ruling regarding Juror W, we need not discuss the challenges to the other jurors.

## II.

### Standard of Review

*Doe v. Wal–Mart,* 210 W.Va. 664, 670, 558 S.E.2d 663, 671 (2001) *quoting State v. Mil-*

*ler,* 197 W.Va. 588, 600–01, 476 S.E.2d 535, 547–48 (1996) states:

> In reviewing the qualifications of a jury to serve in a criminal [or civil] case, we follow a three-step process. Our review is plenary as to legal questions such as the statutory qualifications for jurors; clearly erroneous as to whether the facts support the grounds relied upon for disqualification; and an abuse of discretion as to the reasonableness of the procedure employed and the ruling on disqualification by the trial court.

(Brackets in original.)

## III.

### Discussion

 Syllabus Point 1 of *Doe v. Wal–Mart,* 210 W.Va. 664, 558 S.E.2d 663 (2001) states:

> Pursuant to West Virginia statutory and common law, a person is disqualified from sitting on a jury in a case in which he/she has an interest in the outcome of the litigation. Therefore, if, during jury selection, it becomes apparent that a potential juror has such an interest, the trial court must strike the juror for cause. Failure to so strike an interested potential juror constitutes reversible error.

Our holding in *Doe* is firmly based in the oldest traditions of West Virginia and Anglo–American jurisprudence. *Cf. State v. Dushman,* 79 W.Va. 747, 91 S.E. 809 (1917) (employees of railroad that was the victim of a

---

1. In late 2003 Mrs. Mikesinovich died and the appellant, Mike Mikesinovich, as executor of her estate, replaced her as a plaintiff.

2. The appellant timely raised the alleged errors in jury selection before the jury was empaneled, and renewed them in a post-trial motion for a new trial, that the circuit court denied. Because of our decision regarding one of the jurors, Juror W, it is unnecessary to address the merits of the appellant's challenges to the other four members of the jury panel. The appellant also argues on appeal that the trial court should have directed a verdict on liability because the hospital employee admitted that her conduct did not follow the written policies and procedures prescribed by the hospital for assisting patients. The appellee hospital replies that the policies and procedures were only guidelines, and states that the employee adapted the guidelines to the specific situa-

tion. We do not address this issue other than to say that the conflicting evidence appears to present a classic jury question.

3. Juror W's wife did not work directly with the nurse whose alleged negligence was involved in the instant case. Juror W's son, daughter, son-in-law, and daughter-in-law also worked at hospitals. The record indicates that the trial judge had concerns about Juror W, but ultimately decided to allow him to serve. Because a trial court's decisions on juror qualification issues arise and must be resolved quickly, the discretion of the trial judge in deciding juror disqualification issues must resolve any uncertainty and doubts as to a juror's qualification in favor of excluding the juror. Syllabus Point 3, *O'Dell v. Miller,* 211 W.Va. 285, 565 S.E.2d 407 (2002); *State v. Mills,* 211 W.Va. 532, 539, 566 S.E.2d 891, 898 (2002).

theft were disqualified from serving as jurors in the trial of the accused thief). During the reign of King Henry III (1216–1272), there were multiple reasons for which a juror could be struck for bias:

> Being a servant, familiarity consanguinity, affinity, unles [sic] the connexion [sic] was equally with both parties; being of the same table or family; under the power of a party, so as to be benefited or hurt, owing suit or service; being counsel or advocate; all these, and many others were good causes or exceptions to jurors.

Note, "Rehabilitation of the Juror Rehabilitation Doctrine," 37 Ga.L.Rev. 1471, 1478–1479 (2003) (citing John Reeves, 1 History of the English Law 329 (photo reprint 1969 (2d ed. 1787)) (brackets in original). *See Commonwealth v. Fletcher*, 245 Pa.Super. 88, 91, 369 A.2d 307, 308 (1976) (reversing conviction; holding that in some circumstances court presumes potential juror to be ineligible to serve in a given case because of a "close relationship, be it familial, financial or situational, with any of the parties, counsel, victims or witnesses.").[4]

In *Ozark Border Electric Co–op v. Stacy*, 348 S.W.2d 586, 590–591 (Mo.App.1961), the court said:

> Much has been said concerning the preeminent importance of preserving and safeguarding the right to trial by jury and the disinterested, fair and impartial status of those who serve as jurors. One of our English forebears animatedly declaimed in

the style of his day that: "In my mind, he was guilty of no error, he was charged with no exaggeration, he was betrayed by his fancy into no metaphor, who once said that all we see about us, kings, lords, and commons, the whole machinery of the state, all the apparatus of the system, and its varied workings, aid in simply bringing twelve good men [sic][5] into a box." Thomas Jefferson, the author of our Declaration of Independence and the most conspicuous of American apostles of democracy, who had endeavored, albeit unsuccessfully, to secure the introduction of juries into courts of chancery, in his first inaugural address listed prominently "trial by juries impartially selected" among those principles forming "the bright constellation which has gone before us, and guided our steps through an age of revolution and reformation."

In *Caterpillar, Inc. v. Sturman Industries*, 387 F.3d 1358 (C.A.Fed.2004), the United States Court of Appeals for the Federal Circuit reversed a jury verdict and remanded for a new trial because the husband of one of the jurors worked for Caterpillar at the time of the trial. The court noted that the juror's "financial well-being was to some extent dependent on [Caterpillar's]," 387 F.3d at 1372.[6]

In *Davenport v. Ephraim McDowell Mem. Hospital*, 769 S.W.2d 56 (1988), a jury verdict for a defendant hospital was reversed, in part because two jurors had close family/employment connections with the hospital. The

**4.** A person who has a substantial family relationship-based connection with a party to a lawsuit may reasonably be seen to be "at least subject to potential prejudice," *State v. Archer*, 169 W.Va. 564, 566, 289 S.E.2d 178, 179 (1982) (reversing verdict and awarding new trial where prospective juror's son was a law enforcement officer and court refused to grant challenge for cause). "Actual bias can be shown either by a juror's own admission of bias or by proof of specific facts which show the juror has such prejudice *or connection with the parties* at trial that bias is presumed." Syllabus Point 5, *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996) (emphasis added).

**5.** Hopefully the reader can ignore the "male-centric" language in this otherwise valid quotation. A 1945 Missouri Constitutional provision that prohibited discrimination on the basis of sex

in juror qualification also gave women an automatic right to be excused from jury service. *See State v. Duren*, 556 S.W.2d 11 (Mo.1977) (upholding criminal conviction where defendant challenged automatic excusing of women jurors as violating his Sixth Amendment right to a jury that was a "fair cross-section of the community." In *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), the Supreme Court reversed the Missouri court, holding that a system that resulted in juries with, on average, less than 15% women members disproportionately excluded women. In 1956, West Virginia voters adopted Art. III, Sec. 21 of the *West Virginia Constitution*, authorizing women to serve on juries; it appears that the last state to do so was Alabama in 1966.

**6.** *Quoting Getter v. Wal–Mart*, 66 Fed.3d 1119, 1122 (C.A.10, 1995).

court held that these connections rendered the jurors' statements that they could decide the case without regard to those connections "immaterial." 769 S.W.2d at 60.

In *Dotson v. Pa. Railroad Co.*, 142 F.Supp. 509 (W.D.Pa.1956), the court denied a motion for a new trial, and held that it was proper to "excuse[ ] for cause a juror whose father-in-law was an employee of defendant Railroad." 142 F.Supp. at 511. The *Dotson* court endorsed "the policy of removing for cause any juror about whom any possible cloud of bias might arise due to the intimacies of family relationship to one party litigant or the other . . . . any doubt must give way to an uncompromising atmosphere of impartiality and open-mindedness . . . . The efficacy and future existence of our jury system of trial is dependent upon the relentless enforcement of this elementary rule of justice." *See also, Getter v. Wal–Mart*, 66 F.3d 1119, 1122 (10th Cir.1995) (it was an abuse of discretion for a trial court to fail to excuse for cause a prospective juror whose spouse was an employee and stockholder in the defendant corporation, because the prospective juror's "financial well-being was to some extent defendant's. This is precisely the type of relationship that requires the . . . court to presume bias and dismiss the prospective juror for cause." *Id. See also, Haak v. State*, 275 Ind. 415, 425, 417 N.E.2d 321, 326 (1981)) (new trial awarded; juror was not competent because her spouse "was directly connected to one of the parties by virtue of his acceptance of the offer of employment.").[7]

In *Washington v. City of Seattle*, 170 Wash. 371, 374, 16 P.2d 597, 599 (1932), the court stated:

The juror's husband was an employee for wages of the [defendant]. Clearly he would not have been competent to serve as a juror in the case. Under our statute the earnings of the husband are community property . . . . The wife had direct and immediate interest in the compensation received by her husband, and the reasoning that would imply bias on the part of the husband would, in our opinion, affect her to the same extent. The ruling of the court in denying the challenge was, therefore, prejudicial error.

(Citations omitted.)

■ In the instant case, the circuit court, in denying the appellant's motion for a new trial, stated in its order that "there existed *no relationship* between the venire panel members at issue [including Juror W] and any of the parties ..." (emphasis added).

We think that this conclusion was clearly erroneous. In fact, the relationship of Juror W with the hospital was fairly close. Leaving aside the normal associational ties of a person with their spouse's employer, Juror W's earning power, household income, and family welfare was directly and specifically dependent in part on one of the parties to the lawsuit. Moreover, the juror's spouse worked at the specific physical location where the alleged acts of negligence occurred, and in the same job classification as the individual hospital employee who is alleged to have been negligent. As the cases cited *supra* indicate, such a prospective juror has regularly been held by a wide variety of courts under settled principles of law to be

7. *See also, United States v. Polichemi*, 219 F.3d 698, 704 (7th Cir.2000), where the court said that "a court must excuse a juror for cause if the juror . . . has even a tiny financial interest in the case. Such a juror may well be objective in fact, but the relationship is so close that the law errs on the side of caution." *See also, Walls v. Kim*, 250 Ga.App. 259, 549 S.E.2d 797 (2001) (juror who worked in the same hospital as defendant was disqualified to serve as juror despite "rehabilitation" by trial judge). *See also, Guoth v. Hamilton*, 273 Ga.App. 435, 615 S.E.2d 239 (2005) (jury verdict against doctor in medical malpractice case reversed despite assurances by juror, who was an employee at the hospital where the doctor worked, that she could set aside her personal feelings). *See also, Rine v. Irisari*, 187 W.Va. 550, 420 S.E.2d 541 (1992) (juror who was nurse at defendant hospital should have been struck). *See also, People v. Branch*, 46 N.Y.2d 645, 389 N.E.2d 467, 415 N.Y.S.2d 985 (1979) (expurgatory oath does not rehabilitate a prospective juror who has a disqualifying relationship with a party). *See also, United States v. Burr*, 25 F.Cas. 49, 50 (No. 14692G) (C.C.D.Va. 1807), where Chief Justice Marshall noted that such a person "may declare that he feels no prejudice in the case; and yet the law cautiously incapacitates him from serving on the jury . . . ."

disqualified from service—precisely because of a close relationship to one of the parties.[8]

### IV.

#### Conclusion

Because Juror W had a disqualifying relationship with a party to the litigation, the jury's verdict must be reversed and this case remanded for a new trial.[9]

Reversed and Remanded.

---

8. The circuit court's order in the instant case suggests that this Court's ruling in *Doe v. Wal-Mart*, *supra*, was based primarily on the juror's stock ownership in the defendant corporation, rather than the defendant's employment of the juror's spouse. This reading of *Doe* is untenable. This Court's opinion in *Doe*, in fact, suggested at note 5 that a *de minimis* stockholding by a juror might not by itself be a cognizable "interest in the cause" in a given case—but made no such qualification with respect to the interest and relationship that existed as a result of the employment of the juror's spouse by a party to the suit. We add, to be perfectly clear, that the rule requiring the disqualification of a juror who has an interest in a case cannot be irrationally extended to require absurd results, such as the general disqualification of the spouses of public school teachers as jurors in criminal cases simply because teachers, like prosecutors and police officers, are employed by the same public body, e.g., a county.

9. Juror W was not removed by a peremptory challenge and participated in arriving at the jury's verdict. If Juror W had been stricken by a peremptory challenge, Juror W's inclusion on the panel from which the jury was selected would nevertheless be reversible error. "The fact that Ms. Doe eventually struck the juror is of no consequence. Ms. Doe was entitled to exercise her peremptory strikes from a jury panel consisting of qualified, impartial and unbiased jurors." *Doe v. Wal-Mart*, 210 W.Va. 664, 671, 558 S.E.2d 663, 670 (2001).