654 S.E.2d 605

**STATE of West Virginia, Appellee,**

v.

**William MILLS, Jr., Appellant.**

**No. 33340.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 10, 2007.

Decided Oct. 25, 2007.

E. Taylor George, Kanawha County Public Defender Office, Charleston, WV, for appellant.

Darrell V. McGraw, Jr., Attorney General, R. Christopher Smith, Assistant Attorney General, Charleston, WV, for appellee.

PER CURIAM.

This is a criminal appeal by William Mills, Jr. (hereinafter referred to as "Mr. Mills") from an order of the Circuit Court of Kanawha County convicting and sentencing him for the crime of delivery of a controlled substance.[1] In this appeal, Mr. Mills contends that the circuit court committed error in refusing to strike a prospective juror for cause. After careful consideration of the briefs, record and oral arguments, we affirm.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On October 27, 2005, two Kanawha County

---

1. Mr. Mills was sentenced to one to fifteen years in prison.

Metro Drug Unit[2] police officers were conducting an undercover drug operation in Charleston, West Virginia. The two officers involved, C.A. Greene and J.J. Dotson, were driving an unmarked car on the West Side when they were flagged down by a man in a wheelchair. After the officers stopped their unmarked car, the man in the wheelchair informed them that another man, Mr. Mills, wanted to see them. Mr. Mills, who was sitting on a nearby porch, walked to the car and asked the officers what they wanted. Officer Greene responded that they were looking for a "twenty," which is street slang for $20 worth of crack cocaine. After Officer Greene showed Mr. Mills a marked $20 bill,[3] Mr. Mills produced a bag of crack cocaine. Mr. Mills gave the crack cocaine to Officer Greene, who in turn gave Mr. Mills the $20 bill.

Once the drug purchase was made, Officer Dotson drove about fifty yards and stopped the car. Thereafter, the officers contacted police surveillance units that were in the area and gave a description and location of Mr. Mills. Within minutes of being contacted, the police surveillance officers apprehended Mr. Mills.

After Mr. Mills' arrest, a grand jury indicted him on one count of delivering a controlled substance. A one-day jury trial was held on August 7, 2006. During the jury selection, Mr. Mills moved the trial court to strike a juror, Theodore Douglas, for cause. The trial court denied the motion. The case proceeded to trial, and the jury returned a guilty verdict. This appeal followed.

## II.

## STANDARD OF REVIEW

■ In this appeal we are called upon to determine whether the trial court committed error in refusing to strike a prospective juror for cause. This Court "review[s] the trial court's decision on [striking a juror] under an abuse of discretion standard." *State v. Wade*, 200 W.Va. 637, 654, 490 S.E.2d 724, 741 (1997). *See also State v. Hulbert*, 209

W.Va. 217, 220, 544 S.E.2d 919, 922 (2001) ("We review the issue concerning the lower court's failure to strike for cause [a] juror ... under an abuse of discretion standard."). We have also held that "[a]n appellate court ... should interfere with a trial court's discretionary ruling on a juror's qualification to serve because of bias only when it is left with a clear and definite impression that a prospective juror would be unable faithfully and impartially to apply the law." Syl. pt. 6, in part, *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996). Finally, "the defendant bears the burden of showing that [a] prospective juror[ ][was] actually biased or otherwise disqualified and that the trial court abused its discretion or committed manifest error when it failed to excuse [the juror] for cause." *State v. Phillips*, 194 W.Va. 569, 589–90, 461 S.E.2d 75, 95–96 (1995).

## III.

## DISCUSSION

■ The only issue presented by this appeal involves Mr. Mills' assertion that the trial court should have struck a prospective juror for cause. We have long held that:

The right to a trial by an impartial, objective jury in a criminal case is a fundamental right guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article III, Section 14 of the West Virginia Constitution. A meaningful and effective *voir dire* of the jury panel is necessary to effectuate that fundamental right.

Syl. pt. 4, *State v. Peacher*, 167 W.Va. 540, 280 S.E.2d 559 (1981). Our cases have indicated that:

The relevant test for determining whether a juror is biased is whether the juror had such a fixed opinion that he or she could not judge impartially the guilt of the defendant. Even though a juror swears that he or she could set aside any opinion he or she might hold and decide the case on the evidence, a juror's protestation of

---

**2.** The Metro Drug Unit is composed of police officers from different police agencies in Kanawha County.

**3.** The serial numbers on the $20 bill were recorded.

impartiality should not be credited if the other facts in the record indicate to the contrary.

Syl. pt. 4, *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996). We have also pointed out that "[a]ctual bias can be shown either by a juror's own admission of bias or by proof of specific facts which show the juror has such prejudice or connection with the parties at trial that bias is presumed." Syl. pt. 5, *Miller, id.*

■ Mr. Mills contends that the juror in question, Theodore Douglas, should have been struck for cause on the grounds that: (1) Mr. Douglas was employed as a medic for the Kanawha County Emergency Medical Services and, as such, regularly came in contact with police officers and (2) Mr. Douglas and a potential witness for the State, police officer D. Armstrong, both worked as volunteer firefighters with the Pinch Volunteer Fire Department. During jury voir dire, the following exchange occurred between Mr. Douglas, the trial judge and defense counsel:

> The Court: Alright, this gentleman back there, you are?
>
> Juror Douglas: Theodore Douglas. I know Van [sic] Armstrong.
>
> The Court: And how do you know him?
>
> Juror Douglas: I'm on the Fire Department of Pinch with him.
>
> The Court: Is that going to have any impact on your ability to be fair and impartial?
>
> Juror Douglas: No, sir.
>
> The Court: Are you going to be able to judge his testimony the same as any other witness who testifies?
>
> Juror Douglas: Yes sir.
>
> \* \* \* \*
>
> Defense Counsel: Mr. Douglas, I can't help but notice that you are in your EMS uniform?

> Juror Douglas: Yes.
>
> Defense Counsel: And you are a fire fighter at Pinch.
>
> Juror Douglas: The Pinch Volunteer Fire Department.
>
> Defense Counsel: And you work as an EMS for?
>
> Juror Douglas: Kanawha County, and I work in Clendenin.
>
> Defense Counsel: How long have you been involved as an EMS?
>
> Juror Douglas: About a year and a half.
>
> Defense Counsel: Are the police involved in a majority of your calls?
>
> Juror Douglas: About every one of them, yes.
>
> Defense Counsel: And do you feel that you have a relationship with law enforcement?
>
> Juror Douglas: I don't know.
>
> Defense Counsel: Are you more likely to believe the word of a—
>
> The Court: I can't even hear you.
>
> Defense Counsel: I'm sorry. Are you more likely to believe the word of a law enforcement officer over any other witness?
>
> Juror Douglas: No.
>
> Defense Counsel: I don't think I have any further questions.

■ At the conclusion of questioning Mr. Douglas, defense counsel moved to strike him for cause. In denying the motion, the trial court stated that Mr. Douglas "was absolutely crystal clear in all of his answers that he would be fair and impartial and would not be swayed[.]" Defense counsel subsequently used a peremptory strike to remove Mr. Douglas from the jury panel.[4]

■ Mr. Mills does not contend that Mr. Douglas was disqualified on common law[5] or

---

**4.** The fact that Mr. Mills used a peremptory strike to remove Mr. Douglas does not moot the issue. We have indicated that "if a defendant validly challenges a prospective juror for cause and the trial court fails to remove the juror, reversible error results even if a defendant subsequently uses his peremptory challenge to correct the trial court's error." Syl. pt. 8, in part, *State v. Phillips*, 194 W.Va. 569, 461 S.E.2d 75 (1995).

**5.** Under the common law, there were several grounds for which a person was per se disqualified from serving on a jury. Those grounds were:

statutory grounds.[6] However, Mr. Mills contends that several of our cases support finding that Mr. Douglas was disqualified. One of the cases relied upon by Mr. Mills is our decision in *State v. Beckett*, 172 W.Va. 817, 310 S.E.2d 883 (1983). In Syllabus point 6 of *Beckett* we held, in part, as follows:

> A prospective juror's ... social relationship with an employee of a law enforcement agency does not operate as a per se disqualification for cause in a criminal case unless the law enforcement official is actively involved in the prosecution of the case. After establishing that such a relationship exists, a party has a right to obtain individual voir dire of the challenged juror to determine possible prejudice or bias arising from the relationship.

172 W.Va. 817, 310 S.E.2d 883. The decision in *Beckett* establishes two ways in which a prospective juror may be struck for cause.

First, if the juror has a "social relationship" with a law enforcement official involved with the case, disqualification "may" be automatic.[7] Second, if the juror has a "social relationship" with a law enforcement official not involved in the case, a party may question the juror for prejudice or bias. *See State v. McClure*, 184 W.Va. 418, 423, 400 S.E.2d 853, 858 (1990) (prospective juror did not have to be disqualified for cause due to fact that her husband was police officer); *State v. Bates*, 181 W.Va. 36, 41, 380 S.E.2d 203, 208 (1989) (prospective juror did not have to be disqualified for cause due to fact that her son was police officer); *State v. Perdue*, 179 W.Va. 719, 721, 372 S.E.2d 636, 638 (1988) (prospective juror did not have to be disqualified for cause due to fact that he had relatives who were police officers); *State v. Brown*, 177 W.Va. 633, 639, 355 S.E.2d 614, 620 (1987) (finding no error in failing to strike for cause

---

(1) Kinship to either party within the ninth degree; (2) was arbitrator on either side; (3) that he has an interest in the cause; (4) that there is an action pending between him and the party; (5) that he has taken money for his verdict; (6) that he was formerly a juror in the same case; (7) that he is the party's master, servant, counselor, steward, or attorney, or of the same society or corporation with him; and causes of the same class or founded upon the same reason should be included.
*State v. Riley*, 151 W.Va. 364, 383, 151 S.E.2d 308, 320 (1966).

6. There are several statutes pertaining to juror disqualification. The primary statute is W. Va. Code § 52–1–8(b) (2007) (Supp.2007), which states:

(b) A prospective juror is disqualified to serve on a jury if the prospective juror:

(1) Is not a citizen of the United States, at least eighteen years old and a resident of the county;

(2) Is unable to read, speak and understand the English language. For the purposes of this section, the requirement of speaking and understanding the English language is met by the ability to communicate in American sign language or signed English;

(3) Is incapable, by reason of substantial physical or mental disability, of rendering satisfactory jury service; but a person claiming this disqualification may be required to submit a physician's certificate as to the disability and the certifying physician is subject to inquiry by the court at its discretion;

(4) Has, within the preceding two years, been summoned to serve as a petit juror, grand juror or magistrate court juror, and has actual-

ly attended sessions of the magistrate or circuit court and been reimbursed for his or her expenses as a juror pursuant to the provisions of section twenty-one of this article, section thirteen, article two of this chapter, or pursuant to an applicable rule or regulation of the Supreme Court of Appeals promulgated pursuant to the provisions of section eight, article five, chapter fifty of this code;

(5) Has lost the right to vote because of a criminal conviction; or

(6) Has been convicted of perjury, false swearing or other infamous offense.
*See also* W. Va.Code § 56–6–12 (1923) (Repl.Vol. 2005) (a juror who is related to either party, or has any interest in the cause, or has any bias or prejudice); W. Va.Code § 56–6–14 (1923) (Repl. Vol.2005) (a juror with any case that is to be tried by a jury during the same term); W. Va. Code § 61–5–3 (1923) (Repl.Vol.2005) (a juror who has been convicted of perjury, subornation of perjury or false swearing); W. Va.Code § 61–6–12 (1923) (Repl.Vol.2005) (a juror who participated in a mob or riotous assemblage, committed such crimes or expressed an opinion in favor of such crimes).

7. "We traditionally have not applied [*Beckett*] to mandate the automatic disqualification of a prospective juror merely because of a ... social relationship with an employee of a law enforcement agency who is actively involved in the prosecution of the case." *State v. Mills*, 211 W.Va. 532, 538, 566 S.E.2d 891, 897 (2002). *See State v. King*, 183 W.Va. 440, 451, 396 S.E.2d 402, 413 (1990) (holding that juror was not automatically disqualified under *Beckett* because of the juror's friendship with a law enforcement officer who was a key witness for the State).

two prospective jurors related by marriage to law enforcement officers and a third juror who was related to a deputy sheriff and married to a former employee of the sheriff's office). Under both prongs of the *Beckett* test, a complaining party must show that a "social relationship" exists with a law enforcement official.

The record in this case shows that Mr. Mills failed to establish the "social relationship" requirement of *Beckett*. The evidence in this case only demonstrated that Mr. Douglas and Mr. Armstrong worked for the same volunteer fire department, and that when Mr. Douglas responded to EMS calls, law enforcement officials also routinely responded. The "social relationship" requirement of *Beckett* is not satisfied by this evidence alone. *See State v. Campbell*, 359 N.C. 644, 617 S.E.2d 1, 36 (2005) ("Mere acquaintance with a witness is not enough to require excusal for cause."). The mere fact that people work together does not mean that they like each other or socialize on or off the job. It is this type of evidence that is needed to help establish the "social relationship" requirement of *Beckett*.

■ The record in this case speaks for itself in showing that Mr. Mills failed to ask probing questions as to the nature of Mr. Douglas's relationship with Mr. Armstrong or other law enforcement officials. In fact, Mr. Mills did not ask any direct questions about Mr. Douglas's relationship with Mr. Armstrong. *See State v. Worley*, 179 W.Va. 403, 416, 369 S.E.2d 706, 719 (1988) ("*Beckett* would preclude any claim of error since there were no particular facts developed to demonstrate any bias on the part of the juror."). As pointed out by an appellate court, "[d]isclosure during the trial that a juror knows ... a witness ... is not sufficient to disqualify a juror unless it is shown that the relationship is sufficient to preclude the juror from arriving at a fair verdict. The connection must be such that one must reasonably conclude that it would influence the juror in arriving at a verdict." *State v. Mayeux*, 949 So.2d 520, 533 (La.Ct.App.2007). Moreover, "[t]he inquiry is whether the conditions behind a juror's familiarity with a ... witness are such that their connections would proba-

bly subconsciously affect their decision of the case adversely to the defendants." *Ratliff v. Commonwealth*, 194 S.W.3d 258, 266 (Ky. 2006) (internal quotation marks and citation omitted). Simply put, there is no presumption that people bond together socially, merely because they work together. *See Holloway v. State*, 278 Ga.App. 709, 629 S.E.2d 447, 454 (2006) (juror not disqualified merely because she worked regularly with law enforcement officials); *Turner v. Commonwealth*, 153 S.W.3d 823, 832 (Ky.2005) (juror not disqualified because she knew two state troopers who participated in the investigation of the crime); *People v. DiNapoli*, 28 A.D.3d 1013, 813 N.Y.S.2d 280, 281 (2006) (juror not disqualified merely because juror knew and worked with an individual who was expected to testify as an expert witness). Thus, based on the record in this case, we find that Mr. Mills failed to satisfy the requirements of *Beckett*.

Mr. Mills has also cited to our decision in *State v. Schermerhorn*, 211 W.Va. 376, 566 S.E.2d 263 (2002). In his brief, Mr. Mills has characterized *Schermerhorn* as standing for the proposition that a juror is disqualified merely because the juror's step-father was a police officer. The decision in *Schermerhorn* does not stand for such a proposition.

In *Schermerhorn*, the defendant was found guilty of third offense driving under the influence of alcohol. In the appeal, the defendant argued that the trial judge committed error in failing to strike a prospective juror for cause. We agreed with the defendant. In doing so, we relied upon the following facts:

In the instant case, appellant challenged a prospective juror whose stepfather was a West Virginia University police officer who had previously worked for the Monongalia County Sheriff's Department. Initially, the challenged juror stated that she could impartially consider the evidence. After additional questioning by the court, however, she qualified her answer. The challenged juror also revealed that she "grew up" with the assistant prosecuting attorney assigned to the case, was related by marriage to another assistant prosecutor, and was socially acquainted with still another

assistant prosecutor. In response to "rehabilitation-type" questions, the challenged juror stated that her relationships with attorneys working for the prosecuting attorney's office would not influence her ability to be impartial.

Additionally, the same challenged prospective juror also knew three potential trial witnesses: an investigating officer, a hotel clerk, and the tow truck operator. When asked whether she would be inclined to give their testimony more or less weight than other witnesses, she responded that "maybe one of them because I know him better than the others, so I would tend to think [he] wouldn't lie. You have to answer the question honestly, right?"

When appellant's counsel asked the prospective juror whether her knowledge of the witnesses and assistant prosecutors would make it difficult for her to serve, she responded, "There's a possibility. I would like to think that I'[m] not that kind of person, but I can't honestly say 'no.'"

*Schermerhorn*, 211 W.Va. at 380, 566 S.E.2d at 267.

The underlying facts of *Schermerhorn* are clearly distinguishable from the facts of Mr. Mills' case. The juror in *Schermerhorn* twice stated that she had reservations about being able to impartially decide the case. In the instant proceeding, Mr. Douglas was quite clear in stating that he would be impartial in deciding the merits of the case.[8] Further, and contrary to assertions in Mr. Mills's brief, the trial court did not engage in any rehabilitation questioning of Mr. Douglas.

In sum, on the record presented to this Court we cannot say that the trial court abused its discretion in denying the motion to strike Mr. Douglas for cause.

8. Mr. Mills has also attempted to rely upon our decisions in *Mikesinovich v. Reynolds Memorial Hospital, Inc.*, 220 W.Va. 210, 640 S.E.2d 560 (2006), and *State v. West*, 157 W.Va. 209, 200 S.E.2d 859 (1973). However, *Mikesinovich* and *West* are not remotely relevant. In *Mikesinovich*, we held that insofar as a prospective juror's spouse worked for the defendant in the case, the juror had an "interest" in the outcome and was

## IV.

## CONCLUSION

We affirm the circuit court's order of September 8, 2006, convicting and sentencing Mr. Mills for the crime of delivery of a controlled substance.

Affirmed.

therefore disqualified. In *West*, we found that a prospective juror was employed by a State law enforcement agency and was therefore disqualified. In the instant proceeding, there was no evidence that Mr. Douglas was employed by either party. We also reject Mr. Mills' attempt to characterize Mr. Douglas's employment as an EMS worker and volunteer firefighter as law enforcement employment.