**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**v.) No. 23-299** (Jefferson County CC-19-1999-F-17)

**William T. Widmyer,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner William T. Widmyer appeals the April 26, 2023, order entered by the Circuit Court of Jefferson County denying his motion to vacate his requirement to pay restitution.[1] On appeal, the petitioner argues that the court erred by: 1) ruling that he waived his right to challenge the requirement to pay restitution; 2) denying his motion without conducting an evidentiary hearing and ruling upon all issues raised; and 3) violating the ex post facto clause, which prevents the collection of restitution in this case. Upon our review, finding no substantial question of law and no prejudicial error, we determine oral argument is unnecessary and that a memorandum decision is appropriate. *See* W. Va. R. App. P. 21(c).

In 1999, the petitioner was indicted for first-degree murder, malicious assault, destruction of property, breaking and entering, petit larceny, and possession of a vehicle knowing it to be stolen. After a trial, the jury convicted the petitioner of all charges and did not recommend mercy on the first-degree murder conviction. At sentencing, the court considered issues of restitution and noted that an insurance company had made a "subrogation claim." The State advised that the victim of the malicious assault, Larry Miller, sought a "sum of $8,200; $7,200 for lost wages to compensate his mother who had to quit her job to care for him; and another $1,000 for medical expenses that he had to cover that were not covered by the insurance company." Reverend E. Wilbourne, the father of the murder victim Tara Widmyer, sought a total of $17,625, which included $5,000 for funeral expenses; $2,331 for the grave site and headstone; $1,270 "for attorney fees to work out the custody of [his] granddaughter"; $4,580 in lost wages for Rev. Wilbourne; $2,254 in lost wages for Rev. Wilbourne's wife and the murder victim's mother, Mrs. Wilbourne; and $1,920 for their surviving granddaughter's counseling expenses. The court asked the petitioner's counsel if he contested these amounts, and counsel stated,

---

[1] The petitioner appears by counsel Gary Collias. The State appears by Attorney General John B. McCuskey and Assistant Attorney General Mary Beth Niday. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel.

we have never heard these amounts before. We are not in a position to contest them[,] . . . and I must leave it in the sound discretion of the Court . . . . Having not had an opportunity to investigate any of these matters, we're not in a position to detail them, but I wouldn't go into them anyway even if I had the opportunity. I would only say that if any of them are inappropriate for a restitution hearing, we would object to it, otherwise we're not in a position to object to that.

The court then advised the petitioner's counsel that "[y]ou're entitled to a restitution hearing if you want it." The petitioner's counsel replied, "as I said before, I believe it is best left to the sound discretion of the Court." The circuit court then sentenced the petitioner to the following terms of imprisonment: life without mercy for first-degree murder; two to ten years for malicious wounding; one year for destruction of property; one to ten years for breaking and entering; one year for petit larceny; and one to five years for possession of a vehicle knowing it to be stolen. The court ordered these sentences to be served consecutively and further ordered the petitioner to pay restitution in the amount of $17,625 to Rev. Wilbourne and $8,200 to Mr. Miller. In 2000, this Court refused the petitioner's direct appeal of his convictions and sentences.

In 2001, the petitioner filed a petition for a writ of post-conviction habeas corpus, which the circuit court denied without a hearing in 2006. In 2010, this Court refused the petitioner's appeal of his first petition for a writ of habeas corpus. In 2013, the petitioner filed a second habeas petition. The circuit court denied this petition in 2014 after an omnibus hearing, at which the petitioner was represented by counsel. This Court affirmed the denial of the petitioner's second habeas petition in *Widmyer v. Ballard* (*Widmyer I*), No. 14-0355, 2015 WL 3688211 (W. Va. May 15, 2015) (memorandum decision).

In 2021, the self-represented petitioner filed a motion pursuant to Rule 60(b) of the West Virginia Rules of Civil Procedure for relief from the circuit court's 2014 order denying his second habeas petition, and the court denied this motion. In its order, the court noted that the petitioner had "not paid any of the restitution due to his victims," and stated that it would "make further inquiry into the [p]etitioner's failure to pay restitution." Subsequently, the Jefferson County Office of Probation Services notified the Department of Corrections and Rehabilitation ("DCR") of the restitution awarded by the court in the petitioner's 1999 sentencing order, and in September 2022, DCR began withholding restitution payments from the petitioner's inmate account. This Court affirmed the denial of the petitioner's motion in *Widmyer v. Ames* (*Widmyer II*), No. 22-0175, 2023 WL 2385573 (W. Va. Mar. 7, 2023) (memorandum decision).

In October 2022, the self-represented petitioner filed a motion to vacate the requirement to pay restitution, alleging that the victims' families received full restitution from an insurance company and had also received a civil judgment against him.[2] The petitioner also argued that the deduction of money from his inmate account caused undue hardship and his attorney's failure to request a restitution hearing constituted ineffective assistance of counsel. The circuit court appointed counsel who filed a supplemental motion to vacate the requirement to pay restitution. The petitioner's counsel reiterated his claim that "trial counsel and initial appellate counsel were ineffective and failed to communicate with him following the sentencing hearing" regarding the amount of restitution, his right to a restitution hearing, and his right to appeal the court's restitution

---

[2] The petitioner did not raise this issue on direct appeal or in any of his previous post-conviction proceedings.

2

order. Counsel further argued that, when ordering restitution, the court did not consider the petitioner's financial resources, needs, and earning ability. In a footnote, the petitioner's counsel stated that the statute that allows DCR to deduct money from an inmate's earnings to pay court-ordered financial obligations was enacted after the court entered its restitution order, which "potentially creates ex post facto issues which [the circuit court] would likely not have jurisdiction to address."

In April 2023, the circuit court entered an order denying the petitioner's motion, ruling that he had waived his ability to contest restitution because he did not raise this issue at the sentencing hearing, in his direct appeal, or as a component of an ineffective assistance claim in his habeas petitions. The court found that the petitioner had waited "almost twenty-four years after sentencing" to file this motion, and to allow the petitioner to contest the restitution order would place an "undue burden" on the State because of the passage of time and unavailability of witnesses. The court also ruled that "under West Virginia law, there is a presumption of full restitution," and the expenses claimed by Mr. Miller and Rev. Wilbourne "directly correlated to the actions of [the petitioner] in his violent, brutal attack on Tara Widmyer and Larry Miller." The court concluded that the harm caused by the petitioner "greatly outweighs any financial limitation claimed by" him, given that "he is provided shelter, meals, clothing, and other necessities" while in prison. The petitioner appeals from this order.

This Court reviews "the final order and the ultimate disposition" for an abuse of discretion, "the circuit court's underlying factual findings" for clear error, and questions of law are reviewed de novo. Syl. Pt. 2, in part, *Walker v. West Virginia Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997); Syl. Pt. 1, in part, *State v. Schermerhorn,* 211 W. Va. 376, 566 S.E.2d 263 (2002).

First, the petitioner argues that the circuit court erred in ruling that he had waived his right to challenge the restitution order, even though he did not raise this issue on direct appeal or in any of his previous habeas petitions. We have long held that

> [a] judgment denying relief in post-conviction habeas corpus is *res judicata* on questions of fact or law . . . which with reasonable diligence should have been known but were not raised, and this occurs where there has been an omnibus habeas corpus hearing at which the applicant for habeas corpus was represented by counsel . . . .

Syl. Pt. 2, in part, *Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981). Here, the petitioner was represented by counsel at an omnibus hearing on his second habeas petition, but he did not challenge the restitution order at that time. *See Widmyer I*, 2015 WL 3688211, at *3.

The petitioner submits that the court erred when it ruled that he waived his right to challenge the restitution order, because he was not "aggrieved"[3] by it until DCR began garnishing his inmate account in 2022 and, when he was sentenced in 1999, the Legislature had not yet authorized the collection of restitution from incarcerated persons. *See* Syl. Pt. 1, *Williamson v.*

---

[3] "Aggrieved" is defined as "'ha[ving] legal rights that are adversely affected' or 'harmed by an infringement.'" *W. Va. Land Res., Inc. v. Am. Bituminous Power Partners, LP*, 248 W. Va. 411, 418, 888 S.E.2d 911, 918 (2023) (quoting *Aggrieved*, Black's Law Dictionary (11th ed. 2019)).

*Hays*, 25 W. Va. 609 (1885) (holding that "[t]o entitle any person to obtain a writ of error or appeal from a judgment, he must be both a party to the case and be aggrieved by the judgment."); W. Va. Code §§ 25-1-3c (repealed 2018) and 15A-4-11 (establishing a financial responsibility program for inmates). But the petitioner's restitution obligation was still set by court order, and he was given the opportunity to contest it at his sentencing hearing, and he waived his opportunity to do so. Moreover, the petitioner's position in this respect is inconsistent with his other claim that he received ineffective assistance of counsel for failure to request a restitution hearing. Thus, we find the circuit court did not abuse its discretion when it found the petitioner waived his right to challenge the restitution order.

Second, the petitioner claims that the circuit court erred in denying his motion to vacate the requirement to pay restitution because it did not conduct a hearing to address his claims that the restitution award should be reduced by the payments received by the victims from a third-party insurance company and a judgment that he claims the victims were awarded against him. The petitioner provides no authority that the circuit court was required to hold an evidentiary hearing and has not specified what evidence he would have presented to support his claim that the restitution order should be vacated beyond general assertions that the victims had already been compensated – an issue the court had already addressed at sentencing. Thus, we find the court did not abuse its discretion when it did not conduct an evidentiary hearing on this claim.

Finally, the petitioner argues that the collection of restitution violates the ex post facto clause of the West Virginia Constitution and the United States Constitution because it permits DCR to deduct restitution payments from his inmate account pursuant to the financial responsibility program for inmates, which the Legislature did not enact until after the circuit court sentenced him for his offenses. "Under *ex post facto* principles of the United States and West Virginia Constitutions, a law passed after the commission of an offense which increases the punishment, lengthens the sentence or operates to the detriment of the accused, cannot be applied to him." Syl. Pt. 1, *Adkins v. Bordenkircher*, 164 W. Va. 292, 262 S.E.2d 885 (1980). We have held that "[a]s a general rule . . . errors assigned for the first time in an appellate court will not be regarded in any matter of which the trial court had jurisdiction or which might have been remedied in the trial court if objected to there." Syl. Pt. 17, in part, *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974); *see* Syl. Pt. 4, *State v. Browning*, 199 W. Va. 417, 485 S.E.2d 1 (1997) (holding that "[t]his Court will not consider an error which is not properly preserved in the record nor apparent on the face of the record."). The raise or waive rule "prevents a party from making a tactical decision to refrain from objecting and subsequently, should the case turn sour, assigning error (or even worse, planting an error and nurturing the seed as a guarantee against a bad result)." *State v. LaRock*, 196 W. Va. 294, 316, 470 S.E.2d 613, 635 (1996). Although the petitioner claims that he presented this issue to the circuit court, his motion contains only one reference, in a footnote, to "ex post facto issues which [the circuit court] would likely not have jurisdiction to address." A careful review of the record reflects that the petitioner did not squarely present an ex post facto argument in his motion to vacate the requirement to pay restitution and the circuit court did not address the ex post facto issue in its order.

But even had the petitioner appropriately preserved the error below, we find no ex post facto violation. While the method of collecting restitution was altered by the enactment of West Virginia Code § 15A-4-1, it did nothing to increase his restitution obligations or otherwise operate

4

to his detriment. That, practically, the petitioner expected he would never be forced to pay the restitution and that West Virginia Code § 15A-4-1 dashed that expectation does not affect his restitution so as to offend ex post facto principles. Moreover, the case the petitioner relies upon in support of his argument, *State v. Short*, 177 W. Va. 1, 350 S.E.2d 1 (1986), is readily distinguishable. In *Short*, restitution was imposed as a term of probation, and the applicable law authorized a court to order restitution only within the period of probation. *Id.* at 2, 350 S.E.2d at 2. A statute enacted during the defendant's term of probation permitted enforcement of restitution orders beyond the period of probation. *Id.* When the defendant's term of probation ended and he still owed restitution of around $15,000, this Court determined that it would offend ex post facto principles to require the defendant to pay the remaining restitution based on retroactive application of the statute. *Id.* at 2-3, 350 S.E.2d at 2-3. Here, however, the petitioner's restitution contains no such limitations and the statute at issue in no way increases his payment obligations in a way that violates ex post facto principles. In sum, we conclude the collection of restitution did not violate the ex post facto clause.

For the reasons stated, we affirm.

Affirmed.

**ISSUED:** May 28, 2025

**CONCURRED IN BY:**

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn

**DISQUALIFIED:**

Justice Charles S. Trump, IV